*In re* MARRIAGE OF CHARLES R. PARR, Petitioner-Appellee, and BETTY JOAN PARR, Respondent-Appellant.

Second District   No. 81-125

Opinion filed December 29, 1981.

Richard L. Horwitz and Gilbert X. Drendel, Jr., both of Drendel, Schanlaber, Horwitz and Oakes, of Aurora, for appellant.

Peter K. Wilson, Jr., of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

In January of 1981, the appellant, Betty Joan Parr (Joan) and the appellee, Charles Parr (Charles) were granted a decree of dissolution of their marriage. The circuit court for the Sixteenth Judicial Circuit also entered an order which disposed of the parties' marital and nonmarital assets, and granted Joan maintenance. Joan appeals, asserting that the property disposition was in error, and that the amount awarded as maintenance was inadequate.

The parties were married in October of 1968. For both parties it was a second marriage. At the time of the marriage, Joan owned a home referred to as the Second Street property. Charles was the beneficial owner of a home referred to as the 157 Ingleside property. Charles also held title to four oil and mineral leases, and owned approximately 1,940 shares of stock in the National Brush Company (National Brush) of which Charles was the president. Approximately 1,635 of these shares were purchased prior to the marriage. Charles was also personally liable for two outstanding loans. One loan for approximately $80,000 was owed to the Merchants Bank of Aurora. The other loan for $60,000 was owed to Charles' mother.

From the time of the marriage and up until 1974, Joan's Second Street property was rented out. The rental proceeds were placed in Joan's personal bank account. During the marriage, both Joan and Charles managed their incomes and assets out of separate, personal bank accounts.

There was only one joint account. The joint account was used to pay all household and personal expenses.

In 1973, Charles and Joan bought a $38,500 condominium in Florida. The parties took out a loan to make the downpayment. Title was taken in joint tenancy. In 1974, Joan sold the Second Street home for $25,000. Joan applied $14,000 of the proceeds to satisfy the loan for the condominium downpayment. The remaining $10,000 was deposited in her personal account. In 1975, Charles quitclaimed his interest in the condominium to Joan. The condominium was used by the Parrs and was also rented out to various parties, including National Brush. Joan collected the rental proceeds from the condominium and deposited them in her personal account. She also paid the mortgage and the expenses on the condominium out of her personal account. At the time of the trial, the stipulated appraised value of the condominium and its furnishings was $69,000.

Shortly before the marriage, Joan, who had previously worked for an ad agency, formed her own advertising agency, Integro Advertising (Integro). After the marriage, Integro was incorporated. Joan, the sole shareholder and employee, was paid a salary of $6,000 a year. This income was generally deposited in her personal account.

By 1971, Integro, Inc. had attained sufficient assets to make a downpayment on a three-unit apartment building, the Greene Court apartments. All financial transactions on the Greene Court apartments were handled out of an Integro, Inc., account. When Integro, Inc., was dissolved in 1978, title to the Green Court apartments was transferred to Joan, individually. Joan continued to collect the rents and pay expenses on the building out of a personal account. At the time of the trial, this apartment had an appraised value of $75,000 with an outstanding mortgage of $22,500.

In 1978, Charles borrowed an additional $132,407.46 from the Merchants Bank loan account to finance the purchase of a home referred to as the Southlawn residence. Charles became the holder of the beneficial interest in Southlawn. Joan and Charles moved from Charles' Ingleside home into the Southlawn home. Shortly after they moved, the Ingleside home was sold for $95,000. Most of the proceeds from this sale were used to reduce the indebtedness on the Merchants Bank loan. At the time of the trial on the property disposition, approximately $100 remained due on this Merchants Bank loan and $60,000 remained due on the note to Charles' mother.

In early January of 1980, Charles moved into the Florida condominium. In March, he filed a petition for dissolution of marriage. In September of 1980, grounds for dissolution were established. After a trial to determine the disposition of property, the trial court entered an order

finding that the parties had made a valid and binding agreement concerning the disposition of property. Pursuant to this agreement, the court found the following:

(1) The Southlawn property was awarded to Charles as a nonmarital asset.

(2) The shares of National Brush stock purchased prior to the marriage were nonmarital assets and awarded to Charles.

(3) A $10,000 note Charles received from the sale of the Ingleside property was a nonmarital asset awarded to Charles.

(4) The oil leases were nonmarital assets of Charles Parr.

(5) The Greene Court apartments were a nonmarital asset and awarded to Joan Parr.

(6) The Florida condominium was a nonmarital asset and awarded to Joan Parr.

(7) The following marital property was split 50/50: $12,000 in two checking accounts, a money market certificate for $15,000.

(8) The National Brush stock purchased after marriage was determined to be a marital asset. Sixty percent was awarded to Charles; forty to Joan.

(9) Charles was awarded a forty percent interest in a tax refund check for $900.

(10) Charles was awarded a $2,000 interest in a $10,000 certificate of deposit.

(11) Charles was ordered to pay Joan $5,000 as her interest in the furnishings and improvements on the Southlawn premises.

(12) Charles was ordered to pay Joan $4,700 in rent on the condominium.

(13) Charles was ordered to provide and maintain health insurance for Joan, and to pay $1,700 a month in maintenance and $8,400 of Joan's attorney's fees.

In its order, the court further found that absent a valid and binding agreement and considering the relevant factors set out in paragraph 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503), the property should be divided in the same manner.

■■ Initially, we will address Charles' contention that Joan's acceptance of benefits under the decree estops her from attacking the decree on appeal. It is well settled that a litigant cannot "attack a decree if, by reason of enjoying the benefits of the decree, the opposing party would be placed at a distinct disadvantage upon reversal." (*Adams v. Adams* (1976), 44 Ill. App. 3d 656, 657.) Thus, the correct test for dismissal of an appeal involves two elements: (1) the appellant has accepted benefits from the decree and, (2) the appellee would be at a distinct disadvantage

upon reversal. *Lemon v. Lemon* (1958), 14 Ill. 2d 15, 17-18; *Hancox v. Hancox* (1964), 54 Ill. App. 2d 476, 479-480.

■■ It is apparent that the appellant has accepted some benefits under the decree. Among other benefits, she has accepted maintenance payments and has received health insurance coverage. However, section 413(a) of the Illinois Marriage and Dissolution of Marriage Act specifically states: "An order directing payment of money for support or maintenance of the spouse * * * shall not be suspended or the execution thereof stayed pending the appeal." (Ill. Rev. Stat. 1979, ch. 40, par. 413(a).) Thus, Mrs. Parr's acceptance of the maintenance benefits and health insurance coverage during the pendency of the appeal is specifically authorized by statute and does not affect her right to appeal.

Defendant contends that Joan Parr has accepted other benefits under the decree which are not in the nature of support or maintenance. She has received attorney's fees and has collected rental proceeds on the property awarded to her under the decree. Mere acceptance of these benefits, however, is insufficient to invoke the doctrine of release of errors. (*Lemon v. Lemon* (1958), 14 Ill. 2d 15, 18.) The appellee must also show that the appellant's acceptance of the benefits would place the appellee at a distinct disadvantage upon reversal.

Initially, we note that the disposition of property virtually left the parties in a status quo position. Both prior to the decree and after the decree Joan was collecting the rents on the properties and depositing the same in her account. There is no indication that Joan has even attempted to dispose of any of the assets awarded to her, and more than sufficient assets of the parties remain under the control of the court, so that, if necessary, the court can adequately accommodate the husband for any interest he may have lost in the rent receipts collected by the wife during the appeal and in the $8,400 in attorney's fees. We, therefore, fail to see how the husband in this case has been distinctly disadvantaged. (*Sullivan v. Sullivan* (1979), 68 Ill. App. 3d 242, 247.) The circumstances of this case do not justify applying the release of errors doctrine to estop the appellant from attacking the decree.

We turn next to the initial issue raised by appellant. The appellant contends that the trial court erred in finding that the parties had entered into an oral agreement which provided that upon dissolution of the marriage any property which a party separately managed during the marriage would be considered nonmarital property of that party regardless of whether it was acquired after marriage, or purchased with marital funds.

■■ While it is clear that an oral agreement to settle property rights, if fairly made and in good faith, will be enforced (*In re Marriage of Beck*

(1980), 83 Ill. App. 3d 976, 979), the burden of proving the existence of such an agreement rests upon the person who asserts the agreement (see *Kuperman v. Leak* (1974), 20 Ill. App. 3d 491, 495). The party who asserts the existence of a contract must establish it by clear, convincing and satisfactory evidence. (*Northern Trust Co. v. Tarre* (1980), 83 Ill. App. 3d 684, 689.) Moreover, binding and enforceable oral agreements cannot arise unless the terms of the alleged agreement are sufficiently definite and certain. *Abrams v. Illinois College of Podiatric Medicine* (1979), 77 Ill. App. 3d 471, 476.

In this case, the following evidence concerning an alleged oral agreement was adduced at trial. Charles Parr testified that before the marriage, he and Joan had discussed the possibility of an antenuptial agreement. At that time, the idea of a formal, written agreement was rejected. After they had been married approximately a year, the parties executed separate wills. In his will, Charles established a trust fund with a life income to Joan and he left his estate to his children. Joan's will left everything to her children. Although Charles testified that on this occasion and on several other occasions they "discussed" keeping their assets separate and that he had previously "told" Joan that he intended to keep his assets, specifically the National Brush stock, separate, he did not testify that she agreed to these provisions. Charles contends, however, that Joan's conduct in allowing the assets to remain separate was sufficient evidence of her assent to that agreement. Charles concludes and the trial court found that the conduct of the parties was sufficient to indicate the existence of an agreement to settle the property in the event of divorce or a death.

Overall, the conduct of the parties does indicate that the parties agreed to individually manage several of their assets. There is no evidence, however, that this agreement was intended to establish the rights of the parties in both their marital and nonmarital property upon the dissolution of their marriage. The Illinois Marriage and Dissolution of Marriage Act defines marital property only for the purpose of property division upon dissolution of the marriage and does not prevent individual ownership and management during the span of the marriage. See *In re Marriage of Drennan* (1981), 93 Ill. App. 3d 903, 906.

While Charles has introduced evidence that the parties orally agreed to individually manage various assets, he has failed to introduce evidence that this agreement was also intended to settle property rights upon dissolution of the marriage. Because the party asserting an oral contract has the burden of establishing that a contract existed and establishing the terms of that contract, the finding of the trial court that the parties had agreed to a property settlement is against the manifest weight of the evidence and is vacated.

Joan next contends that, absent a valid settlement agreement, the court made several errors in classifying specific assets of the parties as nonmarital property. We have examined the court's findings as to whether the various assets were nonmarital and have determined that several errors were committed.

The 1635 shares of National Brush stock. The trial court found that these stocks, which were acquired before the marriage, were nonmarital assets of the husband. Joan contends, that because a $100,000 loan from Merchants Bank was incurred when the stock was purchased and because the remaining $80,000 due on the loan at the time of the marriage was paid off during the marriage, the stock is marital property.

■■ Under section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)), the trial court must classify all property owned by the parties as either marital or nonmarital. It is clear that property cannot be both marital and nonmarital. See *In re Komnick* (1981), 84 Ill. 2d 89.

Under section 503(b) (Ill. Rev. Stat. 1979, ch. 40, par. 503(b)), there is an express preference for the classification of property as marital property. However, section 503(a)(1) through (6) (Ill. Rev. Stat. 1979, ch. 40, pars. 503(a)(1) through 503(a)(6)) contains an exclusive list of property which is to be classified as nonmarital. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 528.) This list of exceptions manifests the legislative intent to preserve the character of nonmarital property in those situations where the actions of the parties have not created ambiguity. 86 Ill. 2d 518, 530.

While subsection (6) of section 503(a) permits a spouse who has acquired property before the marriage to hold this property separate from the marriage partnership, as nonmarital (86 Ill. 2d 518, 530), the contribution of marital assets to a nonmarital asset creates a rebuttal presumption that the contribution was intended to change the character of the property to marital (86 Ill. 2d 518, 531). While the property may retain its nonmarital character, despite a contribution of marital funds, the contribution does not affect the burden of proof. The party asserting that the property is nonmarital has the burden of proving by convincing evidence that the property was not intended to become an asset of the marital partnership. See 86 Ill. 2d 518, 531-32.

■■ Under section 503(a)(6) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(6)) the 1635 shares of National Brush stock is to be classified as nonmarital in that the stock was acquired before the marriage. However, during the marriage, Charles used marital assets to maintain and reduce the debt that was incurred when the stock was purchased and that was secured by the 1635 shares of stock. This contribution to the debt reduction, created a rebuttable presumption that Charles intended to treat the stock as a marital asset. (*In re Marriage of Lee* (1981), 87 Ill. 2d 64, 66.)

Here, unlike *Lee*, Charles has rebutted that presumption. (See *In re Marriage of Drennan* (1981), 93 Ill. App. 3d 903.) Among other things, both Charles and Joan repeatedly testified that Charles intended to keep the stock separate, as a nonmarital asset. Therefore, the trial court's finding that the stock was nonmarital is supported by the evidence and is affirmed.

■■ We note that while the 1635 shares of stock remain nonmarital assets, the use of marital assets for the reduction of the debt on the nonmarital stock is to be considered when dividing the marital property. See *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 531; *In re Marriage of Drennan* (1981), 93 Ill. App. 3d 903, 908.

Several other large assets were determined to be nonmarital assets: the Florida condominium, the Southlawn residence and the Greene Court apartments. These three assets, all of which were purchased after the marriage, are discussed below.

The Florida condominium. Unlike the stock, this asset was purchased after the marriage. Under section 503(a)(2), even if the property is acquired after the marriage, it may properly be characterized as nonmarital if it can be shown to be property "acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent." (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(2).) Here, the Parrs obtained a loan in order to make the downpayment on the condominium. Several months later, the downpayment loan was paid in full with the proceeds from the sale of Joan's nonmarital home, the Second Street property. From this evidence the trial court could have concluded that under section 503(a)(2) the condominium was nonmarital property. However, additional evidence indicates that the mortgage payments were made with commingled funds and title was taken in joint tenancy. Under *Smith*, a party who fails to segregate property acquired after marriage cannot claim that the property was acquired by a method described in section 503(a). *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 530.

Moreover, even if the property could initially be classified as nonmarital under section 503(a)(2), the parties' treatment of the condominium during the marriage would create a rebuttable presumption that the property was marital. (See *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223.) The mortgage was paid out of Joan's personal account which contained commingled funds. Title was taken in joint tenancy. Together Joan and Charles used the condominium. When Charles' parents were in Florida, they stayed at the condominium. After the parties separated, Charles moved into the condominium.

Joan failed to introduce sufficient convincing evidence to rebut the presumption that the property was marital. The evidence which indicates

that Joan handled the bookkeeping and was responsible for the management of the property is not sufficient to rebut the presumption that the property was marital. Similarly, Charles quitclaiming his interest in the condominium to Joan is insufficient to rebut the presumption, inasmuch as both parties testified that this was done primarily for business and tax purposes. In fact, at trial, Joan testified that the only asset that they agreed to keep "separate" was the National Brush stock. The overwhelming weight of the evidence indicates that the parties used and treated the condominium as a joint asset. Thus, in light of the preference toward classifying property as marital and Joan's failure to segregate the property from other marital assets, the trial court erred in determining that the Florida condominum was nonmarital property.

■■ The Southlawn residence. This property was purchased after the marriage; therefore, it is presumed marital. That presumption can be destroyed only by one of the six exceptions in section 503(a). Charles contends that under section 503(a)(2) the property is nonmarital in that the home was purchased in exchange for his nonmarital Ingleside property. Even if part of the purchase money could be traced to the Ingleside home, Charles has failed to trace the rest of the purchase price to a nonmarital source. When marital assets are commingled with nonmarital assets to purchase a marital home, the home is presumed to be marital property. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 529.) Because Charles has failed to prove that this property was acquired under one of the exceptions in section 503(a), it is marital property, and the trial court erred in determining otherwise.

■■ The Greene Court apartments. Absent a settlement agreement, this is clearly marital property. Two years after the marriage, Joan formed Integro, Inc. The Greene Court apartments became an asset of Integro, Inc. In 1978, when the corporation was dissolved, the Greene Court apartments were distributed to Joan as sole shareholder of Integro, Inc. As property acquired after the marriage, it is presumed a marital asset regardless of how the title is held. (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223.) That presumption can be destroyed only if one of the six conditions set out in section 503(a) is met. (Ill. Rev. Stat. 1979, ch. 40, pars. 503(a)(1) through 503(a)(6).) This property was not acquired under any of those conditions. Therefore, the trial court erred in finding the apartments to be nonmarital.

Because of the foregoing errors, the trial court's disposition of property of the parties is vacated, and the cause is remanded for redistribution of the marital assets under the guidelines of section 503(c). We have likewise determined that because allocation of maintenance under section 504 of the Act requires the court to consider the amount of marital property awarded, and because the determination of attorneys' fees under

208

section 508 requires the court to consider the financial resources of the parties, it is necessary that we also vacate the allowance of maintenance and attorneys' fees and remand for a redetermination of the same.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.