No. 2--95--1474

_________________________________________________________________

                                 IN THE

                                    

                       APPELLATE COURT OF ILLINOIS

                                    

                             SECOND DISTRICT

__________________________________________________________________

In re MARRIAGE OF               )  Appeal from the Circuit Court

MARILYN KATHLEEN HEGGE,         )  of Winnebago County.

                                )

     Petitioner-Appellee,       )

                                )  No. 94--D--327

and                             )

                                )

ALFRED DEAN HEGGE,              )  Honorable

                                )  K. Craig Peterson,

     Respondent-Appellant.      )  Judge, Presiding.

___________________________________________________________________

                                     

     JUSTICE BOWMAN delivered the opinion of the court:

     Following dissolution of marriage proceedings, the trial court

awarded petitioner, Marilyn Hegge, the marital home.  The trial

court ruled that the marital home could be classified as nonmarital

property because Marilyn acquired it in exchange for nonmarital

property.  On appeal, respondent, Alfred Hegge, challenges this

ruling.  We reverse and remand.

     The following facts are taken from both the parties' agreed

statement of facts and the record.  Marilyn and Alfred were married

in 1985 and resided on Merrill Avenue in Loves Park, Illinois

(Merrill property).  Marilyn had acquired the Merrill property as

part of a prior dissolution of marriage.  At the time of the

Hegges' marriage, Alfred moved into the Merrill property.  Marilyn

owned the Merrill property subject to a mortgage which the Hegges

paid out of their joint checking account.

     On July 31, 1986, the Hegges sold the Merrill property and

purchased a home on Petunia Drive in Machesney Park, Illinois

(Petunia property).  Marilyn received $35,855.93 for the Merrill

property and applied that entire amount to the $62,000 purchase

price of the Petunia property.  Alfred did not contribute any of

his personal assets to the Petunia property purchase.  The Hegges

then obtained a $27,000 mortgage loan for the balance of the

purchase price of the Petunia property.  While both Alfred and

Marilyn signed the mortgage note, title to the Petunia property was

placed only in Marilyn's name.  The mortgage payments on the

Petunia property were again paid out of their joint checking

account.

     At some point after the Hegges began living at the Petunia

property, Marilyn quit her job.  While the mortgage payments on the

Petunia property were still made from the joint account, Alfred's

income became the sole source of funds for that account.  On June

17, 1993, Marilyn and Alfred refinanced the original terms of the

mortgage on the Petunia property.  The application was approved

using Alfred's employment as the sole source of income for the

couple.  The stipulated value of the Petunia property is $83,500.

     On March 17, 1994, Marilyn filed a petition for dissolution of

marriage.  Following a bench trial, the court found that, under

section 503 of the Illinois Marriage and Dissolution of Marriage

Act (Act) (750 ILCS 5/503 (West 1994)), Marilyn acquired the

Petunia property in exchange for the Merrill property, a nonmarital

asset.  Thus, the trial court classified the Petunia property as

nonmarital property and awarded it to Marilyn.

     Alfred contends on appeal that the trial court erred in

finding that the Petunia property was Marilyn's nonmarital

property.  Specifically, Alfred argues that (1) the Petunia

property is presumed to be marital property because it was acquired

during the marriage; and (2) the presumption can only be overcome

by clear and convincing evidence, which Marilyn did not establish. 

Marilyn argues that she overcame the presumption and that the trial

court did not err in awarding her the Petunia property as

nonmarital property. 

     In order to distribute property upon dissolution of marriage,

a trial court must first classify that property as either marital

or nonmarital.  In re Marriage of Jelinek, 244 Ill. App. 3d 496,

503 (1993).   The trial court's determination that an asset is

nonmarital property will not be disturbed on appeal unless that

determination is against the manifest weight of the evidence

(Jelinek, 244 Ill. App. 3d at 503) because that determination rests

largely on the trial court's evaluation of the credibility of the

witnesses (In re Marriage of Werries, 247 Ill. App. 3d 639, 641

(1993)).

     The distribution of property from a dissolution of marriage is

governed by sections 503(a) and (b) of the Act.  750 ILCS 5/503(a),

(b) (West 1994).  The Act states in pertinent part:

          "(a) For purposes of this Act, 'marital property' means

     all property acquired by either spouse subsequent to the

     marriage, except the following, which is known as 'non-marital

     property':

               ***

               (2) property acquired in exchange for property

          acquired before the marriage or in exchange for property

          acquired by gift, legacy or descent;

                                   * * *

          (b) For purposes of distribution of property pursuant to

     this Section, all property acquired by either spouse after the

     marriage and before a judgment of dissolution of marriage or

     declaration of invalidity of marriage, including non-marital

     property transferred into some form of co-ownership between

     the spouses, is presumed to be marital property, regardless of

     whether title is held individually or by the spouses in some

     form of co-ownership such as joint tenancy, tenancy in common,

     tenancy by the entirety, or community property.  The

     presumption of marital property is overcome by a showing that

     the property was acquired by a method listed in subsection (a)

     of this Section."  (Emphasis added.)  750 ILCS 5/503(a)(2),

     (b) (West 1994).

     Thus, the Act creates a rebuttable presumption that all

property acquired after marriage and before dissolution is marital

property regardless of the manner in which title is held. 

DeRossett v. DeRossett, No. 80168, slip op. at 3 (Ill. September

23, 1996); In re Marriage of Hagshenas, 234 Ill. App. 3d 178, 186

(1992); 750 ILCS 5/503(b) (West 1994).  The presumption can only be

overcome with a showing, by clear and convincing evidence, that the

property falls within one of the statutory exceptions listed in

subsection (a).  In re Marriage of Madoch, 212 Ill. App. 3d 1007,

1014 (1991); 750 ILCS 5/503(a) (West 1994).  The party claiming

that the property is nonmarital has the burden of proof.  Madoch,

212 Ill. App. 3d at 1014.  Any doubts as to the nature of the

property are resolved in favor of finding that the property is

marital.  In re Marriage of Eddy, 210 Ill. App. 3d 450, 456-57

(1991); see In re Marriage of Parr, 103 Ill. App. 3d 199, 205

(1981) (Act has "express preference for the classification of

property as marital property").

     In this case, Marilyn concedes that the Petunia property was

acquired during the marriage.  Therefore, she has the burden of

proving that the Petunia property should be classified as

nonmarital property.  See Madoch, 212 Ill. App. 3d at 1014; 750

ILCS 5/503(b) (West 1994).  She argues that the Petunia property

falls within the statutory exception listed in section 503(a)(2) of

the Act (750 ILCS 5/503(a)(2) (West 1994)) because she acquired it

in exchange for the Merrill property, which was undisputedly

nonmarital property.  Marilyn argues that she overcame, by clear

and convincing evidence, the presumption that the Petunia property

was marital property because (1) she contributed all of the

proceeds from the sale of the Merrill property to the purchase of

the Petunia property; (2) Alfred did not pay anything toward the

purchase of the Petunia property at the time of closing; and (3)

the Petunia property was titled in her name only.

     Alfred argues in response that, while Marilyn did provide

approximately $36,000 for the purchase of the Petunia property from

the sale of the Merrill property, the remaining $27,000 of the

purchase price of the Petunia property was financed from a mortgage

they jointly obtained and which they repaid from their joint

checking account.  Moreover, after Marilyn quit her job, the Hegges

paid the mortgage using marital assets derived solely from Alfred's

employment.  Thus, Alfred concludes, because the Petunia property

was purchased during the marriage and because nonmarital assets

were commingled with marital assets to purchase it, Marilyn did not

overcome the presumption that the Petunia property is marital

property.

     The only issue for us to consider is whether Marilyn overcame

the presumption that the Petunia property was marital property. 

After a careful review of the record and relevant case law, we

conclude that Marilyn has not demonstrated by clear and convincing

evidence that the Petunia property should be considered nonmarital

property.  In In re Marriage of Leon, 80 Ill. App. 3d 383 (1980),

the parties purchased a home during their marriage.  Part of the

down payment was funded by the husband's inheritance.  The parties

then obtained a mortgage that they repaid from a joint account. 

The wife conceded that she did not contribute her personal funds to

the purchase of the marital home.  The husband claimed that the

marital home should have been classified as nonmarital property

because it was purchased, in part, with funds he received from an

inheritance.  80 Ill. App. 3d at 385.  In other words, the husband

argued that the marital home should be classified as a nonmarital

asset because he had exchanged nonmarital funds for it.  On appeal,

this court disagreed with the husband and determined that the home

was marital property.  We stated: 

       "While the down payment of the *** home came from a

       nonmarital source, the mortgage payments were made with

       marital funds which were co-mingled in a joint account. 

       Further, the money which was used to pay the mortgage ***

       came from the husband's earnings *** which were deposited in

       a joint account."  Leon, 80 Ill. App. 3d at 385.

       The court concluded that, based on the foregoing facts, the husband

was not able to overcome the presumption that the Leons' home was

marital property.  Leon, 80 Ill. App. 3d at 385; see In re Marriage

of Perlmutter, 225 Ill. App. 3d 362, 374-75 (1992) (assets acquired

after marriage are marital property).

     In In re Marriage of Parr, 103 Ill. App. 3d 199 (1981), this

court again faced a similar situation.  In Parr, the husband

borrowed money during his marriage to finance the purchase of

property called the Southlawn residence.  He "became the holder of

the beneficial interest in Southlawn."  Parr, 103 Ill. App. 3d at

201.  Shortly after he and his wife moved into the Southlawn

residence, he sold their previous home, the Ingleside property,

which was one of his nonmarital assets.  The husband then used the

funds from that sale to repay part of the loan he obtained for the

Southlawn purchase.  The husband argued that the Southlawn

residence was nonmarital property because it was acquired in

exchange for the Ingleside property.  Parr, 103 Ill. App. 3d at

207.  This court found that the husband failed to overcome the

presumption that the Southlawn residence, because it was purchased

after the marriage, was marital property.  We stated that "[e]ven

if part of the purchase money could be traced to the Ingleside

home, [the husband] has failed to trace the rest of the purchase

price to a nonmarital source.  When marital assets are commingled

with nonmarital assets to purchase a marital home, the home is

presumed to be marital property."  Parr, 103 Ill. App. 3d at 207. 

     Similarly in this case, the Hegges acquired the Petunia

property, in part,  with funds from undisputed nonmarital property

--the proceeds from the sale of the Merrill property.  However,

both Marilyn and Alfred were listed as mortgagors on the Petunia

property.  Thus, both were liable for the $27,000 mortgage. 

Moreover, the mortgage payments, as in Leon, were paid out of a

joint checking account, and, after Marilyn quit her job, the

payments were made solely from funds Alfred earned from his

employment.  See Leon, 80 Ill. App. 3d at 385.  As in Parr, Marilyn

has failed to trace the entire purchase price of the Petunia

property to a nonmarital source.  See Parr, 103 Ill. App. 3d at

207.

     Further, Marilyn's testimony does not change our conclusion. 

Marilyn testified that the Petunia property "would be my home" if

circumstances with Alfred were to change.  According to Marilyn,

Alfred said he would "never take the home away" from her. 

Marilyn's testimony, however, does not represent clear and

convincing evidence that the Petunia property should be considered

nonmarital property.  As previously stated, according to the

statute's plain language, it is irrelevant that title to the

Petunia property was placed in Marilyn's name only.  See 

Hagshenas, 234 Ill. App. 3d at 186; 750 ILCS 5/503(b) (West 1994). 

     Even assuming Alfred told Marilyn that he would never take the

Petunia property from her, she did not segregate the Petunia

property from the rest of the Hegges' marital assets.  See Parr,

103 Ill. App. 3d at 206.  Rather, when she contributed nonmarital

assets, the proceeds from the Merrill property sale, to the marital

estate for the purchase of the Petunia property, her funds were

transmuted from nonmarital to marital.  See In re Marriage of

Booth, 255 Ill. App. 3d 707, 711 (1993) (once nonmarital and

marital assets are commingled, the identity of the contributed

property is transmuted to the identity of the recipient property);

750 ILCS 5/503(c)(1) (West 1994).  Therefore, Marilyn cannot now

claim that the Petunia property was acquired in exchange for

nonmarital property.  See Parr, 103 Ill. App. 3d at 206.  Thus, the

evidence presented, combined with the legislative preference toward

classifying property as marital, supports the conclusion that the

Petunia property was marital property.  Accordingly, the trial

court erred in finding to the contrary.  On remand, it must

consider the Petunia property to be a marital asset when redividing

the Hegges' property.

     We note that Marilyn's reliance on In re Marriage of Eddy, 210

Ill. App. 3d 450 (1991), is misplaced.  In Eddy, the husband used

nonmarital funds to secure loans that eventually were used to

purchase three McDonald's franchises after the marriage.  Even

though those franchises were purchased after the marriage, the

court held that the husband had presented clear and convincing

evidence that they were acquired in exchange for nonmarital

property because the purchase of the franchises could be clearly

and entirely traced to nonmarital funds which served to secure the

necessary loans.  Eddy, 210 Ill. App. 3d at 457-58.  In this case,

however, the mortgage on the Petunia property, unlike the loans for

the franchises, was not secured entirely by nonmarital property. 

Thus, the presumption remains that the Petunia property was marital

property.

     For the foregoing reasons, the judgment of the circuit court

of Winnebago County is reversed, and the cause is remanded for

proceedings consistent with this order.

     Reversed and remanded.

     GEIGER and RATHJE, JJ., concur.