# Illinois Official Reports

## Appellate Court

---

### *Ghantous v. Ghantous*, 2014 IL App (3d) 130792

---

| | |
|---|---|
| Appellate Court Caption | SOUAD GHANTOUS, Individually, and as Administrator with Will Annexed of the Estate of Camille I. Ghantous Revocable Trust Agreement Dated April 4, 1999, and as Trustee of the Souad Ghantous Revocable Trust Agreement Dated April 8, 1999, Plaintiff-Appellant, v. ELIAS C. GHANTOUS, a/k/a Leo Ghantous, REGIONS BANK and HAYMEADOW INVESTMENTS, LLC, an Illinois Limited Liability Corporation, Defendants-Appellees. |
| District & No. | Third District Docket No. 3-13-0792 |
| Filed | November 4, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action that was one of five simultaneous pending suits arising from disputes between plaintiff and her children following the death of plaintiff's husband and the discovery that one son, an attorney, had used his parents' money to purchase a large apartment complex in his name for investment purposes, the trial court, following negotiations between the parties and various hearings, entered an order that was found by the trial court to include "all of the terms of the global settlement" of all the pending cases between the parties as set forth in a draft prepared by the attorney son and ordered the parties to execute the agreement and comply with its terms, but when the trial court rejected plaintiff's motion to reconsider the trial court's decision based on the claim that her proposed draft of the agreement more accurately reflected the offer she made and she appealed, the appellate court dismissed plaintiff's appeal on the ground that the appellate court could not effectuate the relief she requested based on the doctrines of mootness and release of errors since the order entered in the case filed by plaintiff's son resolved the same issue pending in plaintiff's chancery action; furthermore, plaintiff accepted benefits from the decision, while a reversal would be disadvantageous for the son. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-CH-95; the Hon. Michael E. Brandt, Judge, presiding. |
| Judgment | Dismissed. |
| Counsel on Appeal | Daniel G. O'Day (argued), Robert J. Hanauer, and Daniel Hanuska, all of Cusack, Gilfillan & O'Day, of Peoria, for appellant. |
| | Joshua G. Vincent and Kimberly A. Jansen (argued), both of Hinshaw & Culbertson LLP, of Chicago, and David E. Jones, of Hinshaw & Culbertson LLP, of Peoria, for appellees. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion. Justices Holdridge and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    The controversy in the case at bar was one of five lawsuits simultaneously pending in the Peoria County circuit court involving disputes between plaintiff Souad Ghantous (Souad) and/or her children. Defendant Leo Ghantous (Leo) is a party in all five cases and Souad is either named as a party plaintiff or beneficiary in two cases, namely, the instant chancery case, case No. 12-CH-95, and a pending probate case, case No. 10-P-100.

¶ 2    Even though Souad was not a named party in all five cases, she initiated settlement discussions with Leo by proposing a global settlement agreement to resolve all five pending cases. Souad's proposal suggested the dismissal of four lawsuits with prejudice and dictated, in part, the conduct of the beneficiaries with respect to the administration of the probate estate.

¶ 3    According to Leo, he incorporated every one of the enforceable conditions his mother proposed into a written release and settlement agreement (Exhibit E), which his mother, Souad, refused to sign. Consequently, Leo simultaneously filed the identical "Motion to Enforce the Settlement Agreement" (Motion to Enforce) in all five pending cases. After two contested motion hearings, the trial court found the parties had reached a global release and settlement agreement affecting all five cases and ordered the parties to sign a modified release and settlement agreement (Exhibit G) prepared by Souad's attorney. The court denied Souad's motion to reconsider that ruling.

¶ 4    Souad appeals the order denying her request to reconsider the entry of the order enforcing the global release and settlement agreement in case No. 12-CH-95, alone. The same order enforcing the global release and settlement agreement has not been challenged in the other four cases and remains binding on all parties to the agreement, including Souad. Consequently, we are unable to effectuate the relief requested by Souad and dismiss the appeal according to the doctrine of mootness and the doctrine of release of errors.

¶ 5                              BACKGROUND

¶ 6    On February 7, 2012, Souad Ghantous filed this chancery complaint against her son, Leo, alleging Leo breached a fiduciary duty. According to the complaint, Souad and Camille Ghantous were "elderly immigrants from Lebanon" who relied on their son, Leo, a licensed attorney, for both legal and financial advice. In addition to their son Leo, Souad and Camille had three more children: Elza, Ibrahim, and Antoun Ghantous. This controversy was one of five lawsuits simultaneously pending in the Peoria County circuit court involving disputes between Souad and/or three of her children, Leo, Elza, and Ibrahim, and the probate of Camille's estate following his death in 2010.

¶ 7    In Camille's probate case, case No. 10-P-100–*In re* Estate of Ghantous–Souad was named administrator of Camille's estate. Thereafter, Leo initiated the following three separate lawsuits involving financial disputes with his siblings: case No. 11-L-343–Ghantous v. Elza Ghantous; case No. 12-L-240–Ghantous v. Elza Ghantous; and case No. 12-L-287–Ghantous v. Elza and Ibrahim Ghantous.

¶ 8    On February 7, 2012, Souad initiated this chancery action against Leo; Leo's company, Haymeadow Investments, LLC; and Regions Bank. In this complaint, Souad is named plaintiff, acting in three separate and distinct capacities: (1) as the "Administrator with Will annexed of the Estate of Camille I. Ghantous Revocable Trust Agreement dated April 4, 1999"; (2) as the "Trustee of the Souad Ghantous Revocable Trust Agreement dated April 8, 1999"; and (3) individually, on her own behalf.

¶ 9    The chancery complaint, filed by Souad, sought equitable relief and money damages against Leo for "Breach of Fiduciary Duty." The complaint stated Leo persuaded his parents to personally borrow $1.1 million in January of 2007, using their own multiple properties as collateral, to contribute toward the purchase price of the Haymeadow Apartments as a "family business." Souad, Camille, and Leo were to share ownership interests in the apartments in percentages that reflected their contributions toward the purchase of the property. According to this complaint, Leo breached a fiduciary duty to his parents when he drafted legal documents creating Haymeadow Investments, LLC (LLC), in his name alone as the only title holder to the newly acquired Haymeadow Apartments. The complaint alleged Leo's actions were contrary to his verbal agreement with his elderly parents.

¶ 10   According to the complaint, the documents Leo prepared did not address the $1.1 million investment Souad and Camille made toward the purchase of the apartments, which they believed would be operated as a family business. Souad alleged in the complaint that Leo obtained a loan for the Haymeadow Apartments, excluding the $1.1 million paid by Souad and Camille, for $7,100,000. Souad and Camille's $1.1 million investment came from a loan that was secured by Souad and Camille's other real estate properties and not the Haymeadow Apartments. Thus, the complaint alleged Leo, through his LLC, solely obtained title to the

Haymeadow Apartments while his parents became solely responsible to repay the $1.1 million loan for their contribution to the Haymeadow Apartments.

¶ 11 After Camille's death in 2010, Souad first discovered that she and Camille did not have any ownership interest that corresponded to the percentage of funds they contributed to the purchase price of the Haymeadow Apartments. She made this discovery when she became the administrator of Camille's estate in Peoria County case No. 10-P-100. The complaint in this chancery matter alleges Leo had partially repaid some money toward the $1.1 million loan at the time of filing, leaving a remaining balance of $675,000.

¶ 12 In this chancery proceeding, Souad requested equitable relief by asking the court to place the Haymeadow Apartments into a constructive trust, naming Souad personally, together with Camille's estate, as the equitable trustees, and ordering Leo to transfer all legal and equitable interests in these apartments to Souad and the estate of Camille. Souad also asked for money damages in the amount of $675,000, the unpaid balance of the loan, plus attorney fees and the costs of the lawsuit.

¶ 13 On April 8, 2013, the attorney representing Souad, in her triplicate capacities as plaintiff in this chancery action, sent a letter (the offer letter) to Leo's attorney detailing terms for a proposed "global settlement agreement" to resolve the family disputes in the chancery action, the probate proceeding, and the three pending lawsuits among her children. This letter identified 10 conditions[1] to be agreed upon by Leo and Souad, in her multiple legal capacities, and each one of her children in order to resolve and settle all pending lawsuits. Six of the ten enumerated conditions were specifically directed toward Leo. All of the conditions Souad proposed were outlined by her attorney in the offer letter as follows:

"1. The Camille I. Ghantous Revocable Trust Agreement dated May 6, 2003, as an amendment and restatement of the Camille I. Ghantous Revocable Trust Agreement dated April 8, 1999 ('the Trust'), shall remain in full force and effect and Leo Ghantous ('Leo') agrees that he will not contest the creation of said Trust, the amendment and restatement thereof, or any actions taken by the Trustee in the administration of the Trust or actions taken by Souad that are consistent with the terms of said Trust;

2. Leo shall voluntarily dismiss, with prejudice, all lawsuits he filed against his sister, Elza Ghantous ('Elza'), being Peoria County Case Numbers 11 L 343, 12 L 240 and 12 L 287, and further, Leo shall execute and deliver to the undersigned a Full and Final Release whereby Elza and her children are released from any and all liability for any act or cause of action Leo now has or may have against them up to the date the release is signed by him. Elza will not object to the settlement otherwise set forth herein. Mutual releases would be required to protect Leo;

3. Leo shall voluntarily dismiss, with prejudice, his Petition for a Citation on Behalf of Estate and Citation of [*sic*] Behalf of Estate filed on November 29, 2010, in the above-referenced cause, Peoria County Case Number 10 P 100;

---

[1]The 10 conditions were incorrectly numbered 1, 2, 3, 4, 5, 6, 7, 8, 6, and 7.

4. Leo shall agree to the closing of the Estate of Camille I. Ghantous pursuant to the current accountings which have been filed with the Probate Court and, further, Leo agrees to waive any and all objections he has or may have to said accounting;

5. Upon the closing of the Estate of Camille I. Ghantous, all estate assets shall be transferred to the aforementioned Trust;

6. Subject to Probate Court approval, Souad Ghantous shall voluntarily dismiss, with prejudice, the lawsuit she filed against Leo, being Peoria County Case Number 12 CH 95;

7. CNA Insurance Company shall pay all attorneys fees accrued and unpaid to the Hinshaw & Culbertson, LLP, and attorneys fees in the amount of $75,000.00 to Ghantous Law Offices, Ltd.;

8. Leo shall not contest the amount of attorneys fees paid or to be paid by the Estate of Camille I. Ghantous to the law firms of Williams, Williams & Loeffel, P.C. and Cusack, Gilfillan & O'Day, LLC;

6. [*sic*] [9.] Elza, Ibrahim Ghantous ('Abe'), Antoun C. Ghantous ('Tony') and Leo will support this settlement before the court, on behalf of themselves and their descendants; and

7. [*sic*] [10.] Souad will support this settlement before the court."

¶ 14 From April 8 through April 15, 2013, there were informal discussions between the attorneys regarding a written settlement agreement consistent with Souad's offer letter. On April 15, 2013, Leo's attorney sent a draft release and settlement agreement incorporating the agreed terms for Souad's signature. When Souad did not sign and return the proposed release and settlement agreement, Leo's attorney filed the Motion to Enforce on June 12, 2013, in case No. 12-CH-95 and all other pending cases, namely: case Nos. 10-P-100, 11-L-343, 12-L-240, and 12-L-287.

¶ 15 Souad filed her written response to the Motion to Enforce in this case, case No. 12-CH-95, and in all of the other pending cases: case Nos. 10-P-100, 11-L-343, 12-L-240, and 12-L-287. The response alleged that the parties had not reached an agreement since Leo's proposed release and settlement agreement included language which deviated from Souad's offer letter dated April 8, 2013.

¶ 16 The trial court held a hearing on Leo's Motion to Enforce on June 28, 2013. The parties did not present any evidence, but both Leo's and Souad's attorneys were present in court and argued their respective positions.[2] Following arguments, the court took the matter under advisement and, on July 1, 2013, entered a written order granting the Motion to Enforce. The court's order is captioned, "In re Estate of Camille [I.] Ghantous" and lists case numbers "10 P 100 [a]nd relating to 12 CH 95, 12 L 287, 11 L 343, and 12 L 240."

¶ 17 In this order, the trial court adopted "the arguments, law, and application of law as set forth in the 6-12-13 filing by the moving party [Leo]." The court further found that Exhibit E, Leo's draft release and settlement agreement, "sets forth all of the terms of the global settlement including a release of liability vis-à-vis CNA Insurance Company and the

---

[2]During her argument and in her response, Souad did not present any argument or authority that any clause in Leo's release and settlement agreement constituted a restraint on her freedom of speech.

- 5 -

objecting parties." The court also ordered all parties to execute the release and settlement agreement (Exhibit E) and to comply with its terms.

¶ 18      On July 25, 2013, Souad filed a motion to reconsider in this case and in case Nos. 10-P-100, 11-L-343, 12-L-240, and 12-L-287. Souad attached the July 1, 2013, order to her motion to reconsider. She alleged the court erred by entering its July 1, 2013, order requiring her to sign Leo's release and settlement agreement (Exhibit E) rather than ordering the parties to accept and execute the language in her April 8, 2013, offer letter by signing the signature lines included in the letter. Souad's motion to reconsider also included an attached document, drafted by her attorney and listed as Exhibit G, a modified release and settlement agreement. In her motion to reconsider, Souad asserted that her own Exhibit G "more accurately reflect[ed] the offer that was made in the letter dated April 8, 2013."

¶ 19      In his written response, Leo again disputed the enforceability of the request to have CNA Insurance Company pay Leo's fees, but agreed the mutual releases in Exhibit G were less "one-sided" and more accurately reflected the agreed terms of the April 8 letter. According to Leo's argument, in her motion to reconsider, Souad conceded the parties had reached a global settlement agreement, as represented by her Exhibit G. Leo had no objection to the court entering an order compelling Leo, Souad, and the other parties to execute Souad's Exhibit G, after deleting the paragraph requiring CNA Insurance Company to pay Leo's attorney fees.

¶ 20      The court again found it could not compel CNA Insurance Company to pay Leo's attorneys and/or his law firm for their fees in his case and, on September 24, 2013, the court entered an order, which included the case numbers and headings for all five cases, denying Souad's motion to reconsider. After striking the provision with respect to the CNA Insurance Company's payments, the court order directed the parties to execute the release and settlement agreement prepared by Souad's attorney, Exhibit G, in all five cases. In that same order, the court dismissed this case (initiated by Souad individually, as administrator of her husband's estate, and as trustee of the revocable trust against Leo for breach of fiduciary duty) with prejudice, case No. 12-CH-95. In addition, pursuant to the same global release and settlement agreement, the court dismissed case Nos. 11-L-343, 12-L-240, and 12-L-287 (initiated by Leo as plaintiff against his siblings) with prejudice. The court entered the same order in all five cases, including case No. 10-P-100, the only case that was not immediately dismissed pursuant to the terms of the global release and settlement agreement that the court enforced.

¶ 21      Souad filed a notice of appeal in this case alone, case No. 12-CH-95, now before this court.

¶ 22                                      ANALYSIS

¶ 23      On appeal, Souad contends that the trial court erred when it ruled, as a matter of law, that the release and settlement agreement Leo submitted for Souad's signature operated as an acceptance of the terms proposed by Souad in her April 8, 2013, written offer letter to settle all five pending cases. Souad argues Leo's document, Exhibit E, did not mirror Souad's proposed conditions for a global settlement of all cases and merely constituted Leo's counteroffer, which Souad found unacceptable.

- 6 -

¶ 24 At the onset, Leo asserts this court must "decline to exercise" its appellate jurisdiction because the doctrines of mootness, collateral estoppel, *res judicata*, and release of errors preclude appellate review. In support of this contention, Leo asserts that all five cases were functionally consolidated in the trial court for purposes of settlement and Souad must comply with the same global release and settlement agreement (Exhibit G) pursuant to the same court order entered in the four other cases, case Nos. 10-P-100, 11-L-343, 12-L-240, and 12-L-287.

¶ 25 Souad disagrees that the five lawsuits were functionally consolidated in the trial court for purposes of settlement. Even assuming, *arguendo*, that Souad is correct and the five cases were not functionally consolidated for settlement purposes, Leo makes a very compelling argument that this court cannot effectuate the relief that Souad has requested in this appeal on at least two grounds. We first consider the doctrine of mootness.

¶ 26 I. Mootness

¶ 27 Illinois courts have long held that an appeal is considered moot where events occur that make it impossible for the appellate court to grant effectual relief or where the issues have ceased to exist. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992); *In re Tekela*, 202 Ill. 2d 282, 292-93 (2002). As discussed below, when the trial court entered an order simultaneously enforcing the same global release and settlement agreement in this case, case No. 12-CH-95, and case No. 10-P-100, such an event occurred that makes it impossible for this court to effectuate the relief Souad seeks in this chancery action without seeking similar, simultaneous relief in the probate action. Significantly, the record on appeal reveals Souad and Leo are both parties in the pending probate action as well as parties in the chancery proceeding subject to this appeal. In fact, Souad filed this chancery complaint alleging Leo breached his fiduciary duty to his parents, Souad and Camille. She initiated this lawsuit in her individual capacity and in the capacity as the administrator of her husband's estate and trustee of the revocable trust. Souad's chancery complaint is tied directly to the pending probate proceedings.

¶ 28 It is undisputed Souad has not initiated an interlocutory appeal concerning the enforceability of the global release and settlement agreement in case No. 10-P-100 and has not requested a stay of the court order enforcing that agreement with respect to the estate. In other words, to date, Souad has not sought to avoid the impact of the release and settlement agreement with respect to case No. 10-P-100.

¶ 29 This procedural circumstance is important to the outcome of this issue because paragraph h of Exhibit G (which the court's order enforced in case No. 10-P-100) mandates that "SOUAD *** will support this settlement before the court, on behalf of [herself] and [her] descendants."[3] Moreover, paragraph f of the same Exhibit G, filed in all five cases, also requires Souad to dismiss the complaint *in this case* with prejudice, case No. 12-CH-95. Further, pursuant to the global release and settlement agreement, which also pertains to case No. 10-P-100 (and the other four cases), the trial court entered an order on September 24, 2013, dismissing the complaint in the case at bar with prejudice pursuant to the terms of the release and settlement agreement itself.

---

[3]The exact language of paragraph h of Souad's Exhibit G, still valid in case No. 10-P-100, provides: "SOUAD, ELZA, ABE, TONY and LEO will support this settlement before the court, on behalf of themselves and their descendants."

¶ 30 Thus, even if this court directs the trial court to vacate the order enforcing the global release and settlement agreement entered in case No. 12-CH-95, thereby vacating the court order dismissing this lawsuit against Leo, Souad is currently compelled by court order in case No. 10-P-100 to dismiss the lawsuit she initiated against Leo in case No. 12-CH-95 (this lawsuit) as part of the global release and settlement agreement that remains viable, to date, in the probate matter. On this basis, we conclude the contested issue raised in this appeal is moot since another identical order is binding on Souad in the probate action requiring the voluntary dismissal of the case at bar, with prejudice.

¶ 31                                    II. Release of Errors

¶ 32 Next, we address Leo's assertion that this appeal should be dismissed because Souad is precluded or estopped, based on the doctrine of release of errors, from requesting the court to set aside the global release and settlement agreement in case No. 12-CH-95.

¶ 33 According to the doctrine of release of errors, a litigant is barred or estopped on appeal from attacking a decree or judgment if the same litigant has enjoyed the benefits of that judgment and the opposing party would be placed at a distinct disadvantage upon reversal. *Mitchell v. Atwood Enterprises, Inc.*, 253 Ill. App. 3d 475, 479 (1993) (citing *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 110-11 (1990)); *Adams v. Adams*, 44 Ill. App. 3d 656, 657 (1976). Hence, the test for dismissal of an appeal under the doctrine of release of errors involves two issues: "(1) [whether] the appellant has accepted benefits from the decree and, (2) [whether] the appellee would be at a distinct disadvantage upon reversal." *In re Marriage of Parr*, 103 Ill. App. 3d 199, 202-03 (1981).

¶ 34 The existence of a distinct disadvantage to the opposing party is the key factor. *Parr*, 103 Ill. App. 3d at 203; *Mitchell*, 253 Ill. App. 3d at 479; *Pitulla*, 202 Ill. App. 3d at 111. In this case, Leo would be at a distinct disadvantage if this court vacates the global release and settlement agreement in case No. 12-CH-95 for several reasons. First, the global release and settlement agreement (Exhibit G) that applied to all five pending cases required Leo to voluntarily dismiss, with prejudice, all pending lawsuits against his siblings. Once the court ordered the enforcement of Exhibit G, the trial court itself entered an order, on September 24, 2013, dismissing Leo's pending lawsuits against his siblings, in case Nos. 11-L-343, 12-L-240, and 12-L-287, with prejudice. Leo has not challenged that order of dismissal in those cases.

¶ 35 While Souad does not dispute Leo's lawsuits were dismissed with prejudice pursuant to the global release and settlement agreement, Souad alleges, on page four of her reply brief, that the July 1 and September 24 orders "have no effect upon the probate process" where she is named administrator and individually as a beneficiary. We disagree. The order entered on September 24, 2013, in case No. 10-P-100 and all other cases requires that Leo and the others not oppose the transfer of all the estate assets to Camille's revocable trust upon final settlement of the estate. As noted with respect to the mootness doctrine above, Souad has not requested the trial court to stay the enforcement of the global release and settlement agreement in the probate action pending the outcome of this appeal. Thus, it appears that Souad, as administrator of her husband's estate, intends to enforce this provision of the global release and settlement agreement. Therefore, we conclude the global release and settlement agreement has a great effect on the probate process.

- 8 -

¶ 36    Moreover, we reject Souad's contention that the doctrine of release of errors should not apply in this case because she did not personally receive a direct benefit from the dismissal of Leo's lawsuits against his siblings. We acknowledge Souad was not a party to those lawsuits and did not directly benefit from the dismissal of Leo's lawsuits against two of Souad's other children. However, Souad's offer letter requested those dismissals along with other demands that directly impacted the proceedings involving her husband's estate, as discussed above.

¶ 37    Further, the order enforcing the global release and settlement agreement, entered by the court on September 24, 2013, in case No. 10-P-100, required Leo to abandon his active approach to the probate action, which involved his active role in monitoring the expenditures of the estate. For example, pursuant to Souad's offer letter, the release and settlement agreement required Leo to waive any and all objections he had or may develop concerning the accountings in the pending estate proceedings and refrain from proceeding on his pending citation, which Leo previously filed as a beneficiary in the probate case. Further, the global release and settlement agreement prohibited Leo from contesting the amount of attorney fees to be paid to the law firms of Williams, Williams & Loeffel, P.C., and Cusack, Gilfillan & O'Day, LLC, by the estate of Camille I. Ghantous.

¶ 38    On appeal, Souad does not allege Leo did not uphold his promises with respect to his conduct as a beneficiary of his father's estate. The record in case No. 10-P-100 reveals that Leo adopted a silent approach to his father's estate proceedings after the court's order enforcing the release and settlement agreement on September 24, 2013.[4] Leo did not file any objections to the annual accounting, dated December 20, 2013, or object to the payments of estate costs, which included the payment of $23,000 in fees to the law firms of Williams, Williams & Loeffel, P.C., and Cusack, Gilfillan & O'Day, LLC. Hence, contrary to Souad's contention raised in her reply brief, the global release and settlement agreement required Leo to modify his conduct and refrain from exercising his rights as a beneficiary in case No. 10-P-100, and he did so as ordered by the court. We conclude that Souad, as administrator and beneficiary of her husband's estate, has accepted the benefits from Leo's ongoing compliance with the terms of the global release and settlement agreement that require him to passively allow, as a beneficiary in the probate case, the payment of fees and the further distribution of assets.

¶ 39    Consequently, we conclude the doctrine of release of errors now estops Souad from attempting to obtain a reversal of the order dismissing her chancery lawsuit, case No. 12-CH-95, since she has accepted the benefits of a similar order enforcing the very same global release and settlement agreement in the probate action.

---

[4]We take judicial notice of the Peoria County circuit clerk's records of the probate proceedings and the annual accounting filed on December 20, 2013, in case No. 10-P-100. See *In re Application of the County Treasurer & ex officio County Collector*, 356 Ill. App. 3d 1102, 1111 (2005). These records show multiple court proceedings from March 2010 until the order at issue was filed in the probate case on September 24, 2013, but no action occurred after that date other than the filing of the annual accounting on December 20, 2013. This annual accounting, filed with the court without objection from Leo, revealed payments of $23,000 from the estate to the law firms of Williams, Williams & Loeffel, P.C., and Cusack, Gilfillan & O'Day, LLC. These payments are consistent with the parties' agreement set out in paragraphs d and g of the global release and settlement agreement drafted by Souad (Exhibit G).

¶ 40      Accordingly, since the doctrine of mootness and the doctrine of release of errors require a dismissal of this appeal, we find it unnecessary to address whether the additional principles of collateral estoppel, *res judicata*, and freedom of speech have any application in this matter.

¶ 41                          CONCLUSION

¶ 42      Since any appeal regarding the order enforcing the release and settlement agreement, in this case alone, is barred by the doctrines of mootness and release of errors, Souad is estopped from challenging those orders in this appeal.

¶ 43      Dismissed.