*In re* MARRIAGE OF MARILYN KATHLEEN HEGGE, Petitioner-Appellee, and ALFRED DEAN HEGGE, Respondent-Appellant.

Second District   No. 2—95—1474

Opinion filed December 3, 1996.—Rehearing denied January 8, 1997.

David F. Monteleone and William E. Schirger, both of Schirger & Monteleone, of Rockford, for appellant.

Gerald W. LaFayette, of Rockford, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Following dissolution of marriage proceedings, the trial court awarded petitioner, Marilyn Hegge, the marital home. The trial court ruled that the marital home could be classified as nonmarital property because Marilyn acquired it in exchange for nonmarital property. On appeal, respondent, Alfred Hegge, challenges this ruling. We reverse and remand.

The following facts are taken from both the parties' agreed statement of facts and the record. Marilyn and Alfred were married in 1985 and resided on Merrill Avenue in Loves Park, Illinois (Merrill property). Marilyn had acquired the Merrill property as part of a prior dissolution of marriage. At the time of the Hegges' marriage, Alfred moved into the Merrill property. Marilyn owned the Merrill property subject to a mortgage, which the Hegges paid out of their joint checking account.

On July 31, 1986, the Hegges sold the Merrill property and purchased a home on Petunia Drive in Machesney Park, Illinois (Petunia property). Marilyn received $35,855.93 for the Merrill property and applied that entire amount to the $62,000 purchase price of the Petunia property. Alfred did not contribute any of his personal assets to the Petunia property purchase. The Hegges then obtained a $27,000 mortgage loan for the balance of the purchase price of the Petunia property. While both Alfred and Marilyn signed the

mortgage note, title to the Petunia property was placed only in Marilyn's name. The mortgage payments on the Petunia property were again paid out of their joint checking account.

At some point after the Hegges began living at the Petunia property, Marilyn quit her job. While the mortgage payments on the Petunia property were still made from the joint account, Alfred's income became the sole source of funds for that account. On June 17, 1993, Marilyn and Alfred refinanced the original terms of the mortgage on the Petunia property. The application was approved using Alfred's employment as the sole source of income for the couple. The stipulated value of the Petunia property is $83,500.

On March 17, 1994, Marilyn filed a petition for dissolution of marriage. Following a bench trial, the court found that, under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 (West 1994)), Marilyn acquired the Petunia property in exchange for the Merrill property, a nonmarital asset. Thus, the trial court classified the Petunia property as nonmarital property and awarded it to Marilyn.

Alfred contends on appeal that the trial court erred in finding that the Petunia property was Marilyn's nonmarital property. Specifically, Alfred argues that (1) the Petunia property is presumed to be marital property because it was acquired during the marriage; and (2) the presumption can only be overcome by clear and convincing evidence, which Marilyn did not establish. Marilyn argues that she overcame the presumption and that the trial court did not err in awarding her the Petunia property as nonmarital property.

■ In order to distribute property upon dissolution of marriage, a trial court must first classify that property as either marital or nonmarital. *In re Marriage of Jelinek*, 244 Ill. App. 3d 496, 503 (1993). The trial court's determination that an asset is nonmarital property will not be disturbed on appeal unless that determination is against the manifest weight of the evidence (*Jelinek*, 244 Ill. App. 3d at 503) because that determination rests largely on the trial court's evaluation of the credibility of the witnesses (*In re Marriage of Werries*, 247 Ill. App. 3d 639, 641 (1993)).

■ The distribution of property from a dissolution of marriage is governed by sections 503(a) and (b) of the Act. 750 ILCS 5/503(a), (b) (West 1994). The Act states in pertinent part:

"(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':
*** 
(2) property acquired in exchange for property acquired

before the marriage or in exchange for property acquired by gift, legacy or descent;

* * *

(b) For purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property, *regardless of whether title is held individually* or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." (Emphasis added.) 750 ILCS 5/503(a)(2), (b) (West 1994).

Thus, the Act creates a rebuttable presumption that all property acquired after marriage and before dissolution is marital property regardless of the manner in which title is held. *In re Marriage of DeRossett*, 173 Ill. 2d 416, 420 (1996); *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186 (1992); 750 ILCS 5/503(b) (West 1994). The presumption can only be overcome with a showing, by clear and convincing evidence, that the property falls within one of the statutory exceptions listed in subsection (a). *In re Marriage of Madoch*, 212 Ill. App. 3d 1007, 1014 (1991); 750 ILCS 5/503(a) (West 1994). The party claiming that the property is nonmarital has the burden of proof. *Madoch*, 212 Ill. App. 3d at 1014. Any doubts as to the nature of the property are resolved in favor of finding that the property is marital. *In re Marriage of Eddy*, 210 Ill. App. 3d 450, 456-57 (1991); see *In re Marriage of Parr*, 103 Ill. App. 3d 199, 205 (1981) (Act has "express preference for the classification of property as marital property").

In this case, Marilyn concedes that the Petunia property was acquired during the marriage. Therefore, she has the burden of proving that the Petunia property should be classified as nonmarital property. See *Madoch*, 212 Ill. App. 3d at 1014; 750 ILCS 5/503(b) (West 1994). She argues that the Petunia property falls within the statutory exception listed in section 503(a)(2) of the Act (750 ILCS 5/503(a)(2) (West 1994)) because she acquired it in exchange for the Merrill property, which was undisputedly nonmarital property. Marilyn argues that she overcame, by clear and convincing evidence, the presumption that the Petunia property was marital property because (1) she contributed all of the proceeds from the sale of the Merrill property to the purchase of the Petunia property; (2) Alfred did not

pay anything toward the purchase of the Petunia property at the time of closing; and (3) the Petunia property was titled in her name only.

Alfred argues in response that, while Marilyn did provide approximately $36,000 for the purchase of the Petunia property from the sale of the Merrill property, the remaining $27,000 of the purchase price of the Petunia property was financed from a mortgage they jointly obtained and which they repaid from their joint checking account. Moreover, after Marilyn quit her job, the Hegges paid the mortgage using marital assets derived solely from Alfred's employment. Thus, Alfred concludes, because the Petunia property was purchased during the marriage and because nonmarital assets were commingled with marital assets to purchase it, Marilyn did not overcome the presumption that the Petunia property is marital property.

The only issue for us to consider is whether Marilyn overcame the presumption that the Petunia property was marital property. After a careful review of the record and relevant case law, we conclude that Marilyn has not demonstrated by clear and convincing evidence that the Petunia property should be considered nonmarital property. In *In re Marriage of Leon*, 80 Ill. App. 3d 383 (1980), the parties purchased a home during their marriage. Part of the down payment was funded by the husband's inheritance. The parties then obtained a mortgage that they repaid from a joint account. The wife conceded that she did not contribute her personal funds to the purchase of the marital home. The husband claimed that the marital home should have been classified as nonmarital property because it was purchased, in part, with funds he received from an inheritance. 80 Ill. App. 3d at 385. In other words, the husband argued that the marital home should be classified as a nonmarital asset because he had exchanged nonmarital funds for it. On appeal, this court disagreed with the husband and determined that the home was marital property. We stated:

> "While the down payment of the *** home came from a nonmarital source, the mortgage payments were made with marital funds which were co-mingled in a joint account. Further, the money which was used to pay the mortgage *** came from the husband's earnings *** which were deposited in a joint account." *Leon*, 80 Ill. App. 3d at 385.

The court concluded that, based on the foregoing facts, the husband was not able to overcome the presumption that the Leons' home was marital property. *Leon*, 80 Ill. App. 3d at 385; see *In re Marriage of Perlmutter*, 225 Ill. App. 3d 362, 374-75 (1992) (assets acquired after marriage are marital property).

In *In re Marriage of Parr*, 103 Ill. App. 3d 199 (1981), this court again faced a similar situation. In *Parr*, the husband borrowed money during his marriage to finance the purchase of property called the Southlawn residence. He "became the holder of the beneficial interest in Southlawn." *Parr*, 103 Ill. App. 3d at 201. Shortly after he and his wife moved into the Southlawn residence, he sold their previous home, the Ingleside property, which was one of his nonmarital assets. The husband then used the funds from that sale to repay part of the loan he obtained for the Southlawn purchase. The husband argued that the Southlawn residence was nonmarital property because it was acquired in exchange for the Ingleside property. *Parr*, 103 Ill. App. 3d at 207. This court found that the husband failed to overcome the presumption that the Southlawn residence, because it was purchased after the marriage, was marital property. We stated that "[e]ven if part of the purchase money could be traced to the Ingleside home, [the husband] has failed to trace the rest of the purchase price to a nonmarital source. When marital assets are commingled with nonmarital assets to purchase a marital home, the home is presumed to be marital property." *Parr*, 103 Ill. App. 3d at 207.

■ Similarly in this case, the Hegges acquired the Petunia property, in part, with funds from undisputed nonmarital property—the proceeds from the sale of the Merrill property. However, both Marilyn and Alfred were listed as mortgagors on the Petunia property. Thus, both were liable for the $27,000 mortgage. Moreover, the mortgage payments, as in *Leon*, were paid out of a joint checking account, and, after Marilyn quit her job, the payments were made solely from funds Alfred earned from his employment. See *Leon*, 80 Ill. App. 3d at 385. As in *Parr*, Marilyn has failed to trace the entire purchase price of the Petunia property to a nonmarital source. See *Parr*, 103 Ill. App. 3d at 207.

Further, Marilyn's testimony does not change our conclusion. Marilyn testified that the Petunia property "would be my home" if circumstances with Alfred were to change. According to Marilyn, Alfred said he would "never take the home away" from her. Marilyn's testimony, however, does not represent clear and convincing evidence that the Petunia property should be considered nonmarital property. As previously stated, according to the statute's plain language, it is irrelevant that title to the Petunia property was placed in Marilyn's name only. See *Hagshenas*, 234 Ill. App. 3d at 186; 750 ILCS 5/503(b) (West 1994).

Even assuming Alfred told Marilyn that he would never take the Petunia property from her, she did not segregate the Petunia property from the rest of the Hegges' marital assets. See *Parr*, 103 Ill.

App. 3d at 206. Rather, when she contributed nonmarital assets, the proceeds from the Merrill property sale, to the marital estate for the purchase of the Petunia property, her funds were transmuted from nonmarital to marital. See *In re Marriage of Booth*, 255 Ill. App. 3d 707, 711 (1993) (once nonmarital and marital assets are commingled, the identity of the contributed property is transmuted to the identity of the recipient property); 750 ILCS 5/503(c)(1) (West 1994). Therefore, Marilyn cannot now claim that the Petunia property was acquired in exchange for nonmarital property. See *Parr*, 103 Ill. App. 3d at 206. Thus, the evidence presented, combined with the legislative preference toward classifying property as marital, supports the conclusion that the Petunia property was marital property. Accordingly, the trial court erred in finding to the contrary. On remand, it must consider the Petunia property to be a marital asset when redividing the Hegges' property.

We note that Marilyn's reliance on *In re Marriage of Eddy*, 210 Ill. App. 3d 450 (1991), is misplaced. In *Eddy*, the husband used nonmarital funds to secure loans that eventually were used to purchase three McDonald's franchises after the marriage. Even though those franchises were purchased after the marriage, the court held that the husband had presented clear and convincing evidence that they were acquired in exchange for nonmarital property because the purchase of the franchises could be clearly and entirely traced to nonmarital funds, which served to secure the necessary loans. *Eddy*, 210 Ill. App. 3d at 457-58. In this case, however, the mortgage on the Petunia property, unlike the loans for the franchises, was not secured entirely by nonmarital property. Thus, the presumption remains that the Petunia property was marital property.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for proceedings consistent with this order.

Reversed and remanded.

GEIGER and RATHJE, JJ., concur.