No. 2--06--0912          Filed:  10-29-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| DENNIS M. FORD, | ) | of McHenry County. |
| | ) | |
| Petitioner and | ) | |
| Counterrespondent-Appellant, | ) | |
| | ) | |
| and | ) | No. 02--DV--1009 |
| | ) | |
| KAREN L. FORD, | ) | |
| | ) | Honorable |
| Respondent and | ) | Gordon E. Graham, |
| Counterpetitioner-Appellee. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

On August 18, 2006, following a bench trial that concluded roughly 11 months earlier, the circuit court of McHenry County entered a judgment dissolving the marriage of the petitioner and counterrespondent, Dennis M. Ford, and the respondent and counterpetitioner, Karen L. Ford. Dennis appeals from the judgment, arguing that the trial court erred in ordering the marital estate to be reimbursed for mortgage payments made during the marriage on real estate that he acquired prior to the marriage. He further argues that the trial court erred in determining child support. We affirm the award of child support. However, we vacate those portions of the judgment ordering reimbursement to the marital estate, and we remand for further proceedings.

The parties were married on January 2, 1994, and they have two children--Kristie (who was born on November 29, 1994) and Connor (who was born on March 15, 1996). On October 21, 2002,

Dennis filed a petition to dissolve the marriage. Karen filed a counterpetition on April 29, 2003. On August 30, 2005, the matter proceeded to trial on the counterpetition. Evidence admitted at trial established that during the marriage the parties lived in a home in Port Barrington. Dennis purchased the home prior to the marriage. When the parties wed, the principal balance of the mortgage loan on the home was approximately $58,000. That amount was paid in full with marital funds during the marriage. On November 3, 2003, Karen was granted exclusive possession of the marital residence. At the time of trial, Dennis was living with a friend, Kent, at Kent's house in Crystal Lake. Dennis's rent was about $1,100 per month, but he admitted that at the time of trial he was behind in his rent payments.

Throughout the marriage, Dennis was self-employed as an installer of carpeting and flooring. He operated under the name Magic Carpet Service and his main customer was Carpet One. About three or four times a month, Dennis did "side jobs" for friends and family. He purchased the materials for these jobs from Shaw Industries and resold them to his customers at a markup ranging from $2 to $3.50 per square foot, depending on the type of material installed. Dennis testified that in 2004 his gross income was about $138,000. He determined his income by adding up the deposits to his business checking account. Of this amount, Dennis received $105,000 from Carpet One. The remainder of his income was from side jobs. Dennis had earned an additional $7,000 from Carpet One, but that amount was turned over to Karen's attorney in garnishment proceedings initiated to collect an award of attorney fees.

Dennis admitted that in determining his gross income, he did not include any cash payments he received, but he recalled being paid for a job in cash on only one occasion in 2004. He used the cash to pay for repairs to his truck. Dennis assumed that he had not claimed the cost of the repairs

as a business expense.  He admitted that in prior years he was paid in cash more often and he used the cash to pay for vacations.  In June 2004, Dennis paid about $1,500 for hardwood flooring and tile and he installed it in the Crystal Lake house.  He did so in lieu of rent.

During his testimony, Dennis was shown an affidavit he executed that was filed with the trial court on March 24, 2005.  Dennis initially testified that his sister prepared the affidavit, but later stated that he and his sister worked on it together.  The affidavit includes a statement of Dennis's business income and expenses, which apparently pertains to the 2004 calendar year.  Consistent with Dennis's testimony, the statement indicates that his gross income was $138,575.  He listed various expenses totaling roughly $99,000 including about $24,000 in wages and about $47,000 paid to various suppliers.  Among the amounts paid to suppliers, Dennis listed $33,398 paid to Shaw Industries for materials used in side jobs.  Dennis acknowledged that the amount paid to Shaw Industries plus the $105,000 received from Carpet One roughly equaled the gross income he reported.  He could not explain how this was possible, given his testimony that he adds a markup to the flooring materials he uses for his side jobs.  Dennis conceded that the affidavit must have incorrectly reported either his gross income or the payments to Shaw Industries.  Asked by Karen's attorney whether "this whole affidavit could be incorrect," Dennis responded, "It could be."

Dennis testified that he and his brother William owned rental property in Round Lake Beach and Carpentersville.  In 1996, proceedings were instituted to foreclose the mortgage on the Round Lake Beach property.  Dennis paid $3,390 to cure the default on the mortgage.  The mortgage payment on the property was $670 per month.  The property was leased to one of Dennis's friends, Bill Russell.  At one point in 2002, Russell owed over $13,000 in past-due rent.  At the time of trial, Russell was making current rent payments in an amount equal to the mortgage payments, but Dennis

believed Russell still owed about $8,000 in past-due rent. Dennis testified that in 2004, he and William split the mortgage payments on the Round Lake Beach property. The mortgage payment on the Carpentersville property was $428 per month. During questioning by Karen's attorney, the following exchange occurred:

"Q. You have paid in excess of $50,000 out of marital monies on the two rental properties ***; correct?

A. That's incorrect.

Q. It's incorrect?

A. Yes.

Q. You paid more than that?

A. No. Less. I transferred the rent checks to the bank.

* * *

Q. You have written out of your own accounts over $50,000 in rent checks--in money toward--for the two rental properties?

A. Right. I deposit the rent into my Magic Carpet account, and then I write the check to [William]."

Karen testified that Dennis would sometimes be paid in cash or receive cash tips. He kept the cash in a safe deposit box and used it to pay the children's nanny and to pay for certain vacation expenses (other than airfare, which was paid for with a credit card). Karen kept the books for the rental properties from 1996 to 2000. Prior to testifying, she reviewed bank records through 2003 to determine how much Dennis had paid on the mortgages on the rental properties. According to

Karen's testimony, the amount was over $57,000, and the funds came from Dennis's checking account.

The trial court issued a written decision on September 30, 2005. The court determined that the marital residence in Port Barrington and the rental properties in Round Lake Beach and Carpentersville were Dennis's nonmarital property and awarded them to him. However, the trial court concluded that the marital estate had contributed to Dennis's nonmarital estate because money earned during the marriage had been used to pay the mortgages on the marital residence and the rental properties. The trial court stated, "The amount to reimburse the marital estate is calculated by eleven years worth of mortgage payments on both the Carpentersville and the Round Lake Beach house [sic], this would come to approximately $144,000.00 therefore, to round the number off the marital estate should be reimbursed by the non-marital estate to the tune of $73,000.00." The trial court awarded Karen a $73,000 interest, secured by a lien, in the Port Barrington home.

The trial court also awarded Karen custody of the parties' two children and fixed Dennis's child support at $1,600 per month. In doing so, the court noted that in 2004 Dennis "had run through his bank account the sum of $138,575" and that "[q]uestions were never asked as to what portion of that were expenses to maintain and run his business, if any." The trial court explained the child support calculation as follows:

"This is contemplated the income at $138,000 with approximately $33,000 tax liability. The $21,200 self-employment tax rate and 3% for the Illinois taxes using rounded up rough figures, but coming to close approximates of the circumstances."

The judgment dissolving the parties' marriage incorporated these rulings and also ordered Dennis to reimburse Karen "the sum of $20,000.00 for her share of marital assets used by [Dennis]

for non-marital marital home property." The judgment provided that this amount would be a judgment lien on the Port Barrington home.

Dennis first argues that the trial court erred in ordering him to reimburse the marital estate for marital funds spent on the Port Barrington home. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(c) (West 2006)) provides in pertinent part:

"Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

(1) When marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the estate receiving the contribution, subject to the provisions of paragraph (2) of this subsection ***.

(2) When one estate of property makes a contribution to another estate of property *** the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence ***. *** The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution."

A trial court's determination that one estate of property is entitled to reimbursement from another will not be reversed unless it is against the manifest weight of the evidence. Accord In re Marriage of Nelson, 297 Ill. App. 3d 651, 657 (1998). Dennis contends that the contribution is not

retraceable by clear and convincing evidence. We disagree. It is undisputed that $58,000 in marital funds were applied to the mortgage on the marital residence. Thus, the contribution to Dennis's equity in the marital home is sufficiently retraceable to the marital estate.

Dennis cites In re Marriage of Snow, 277 Ill. App. 3d 642 (1996), in support of his argument that it was error to order reimbursement. In Snow, as in this case, the parties lived in a home that the husband had purchased prior to the marriage. Marital funds in the amount of $25,000 were applied to the mortgage on the home. The Snow court held that the trial court did not err in failing to order reimbursement of this amount to the marital estate.

"[A]lthough the marital estate contributed $25,000 to petitioner's nonmarital estate through the payment of the mortgage on petitioner's nonmarital residence, there was no evidence how much of the contribution went to principal payments and how much went to interest payments. Generally, there is no right to reimbursement for interest payments. Furthermore, the marital estate would not be entitled to reimbursement for mortgage payments contributed to nonmarital property if the marital estate has already been compensated by the use of that property. [Citation.] Here, the parties lived in petitioner's nonmarital residence for at least 10 years during the marriage. Accordingly, because the parties benefited from living in the house for a substantial period of time, the court could reasonably have found that the marital estate had already been compensated for its contributions." Snow, 277 Ill. App. 3d at 650.

Dennis argues that in this case, as in Snow, (1) there is no evidence how much of the mortgage payment was for interest and (2) the marital estate was compensated for its contribution by its use of the property. The first point is meritless. The record establishes that when the parties

married, that mortgage had a balance of $58,000, which was fully paid during the marriage. This amount was entirely principal. Dennis's second point is more persuasive, however. Responding to it, Karen points out that the $20,000 award to her was roughly one-third of the $58,000 contribution to the mortgage on the Port Barrington property. According to Karen, "the [trial] court could reasonably consider one-third (1/3) of the principal payment as compensation for the use of the non-marital property." (By implication, the remaining third represents Dennis's share of the reimbursed contribution.) The argument is unconvincing. The parties were married from January 2, 1994, through August 18, 2006--a period of 151 months. The award of $20,000 divided by 151 months equals compensation of about $132 per month. The value of the home to the marital estate was undoubtedly greater than that amount. This amount is clearly inadequate, and the trial court's decision was against the manifest weight of the evidence. See In re Marriage of Crook, 211 Ill. 2d 437, 454 (2004) (determining that the marital estate was not entitled to reimbursement of $40,000 contributed to the nonmarital estate because the marital estate reaped the benefit of the wife's nonmarital contributions in providing the marital estate with a home, free of rent or mortgage payments). We conclude that the benefit of the use of the Port Barrington property fully compensated the marital estate for its contribution and that the marital estate is not entitled to reimbursement. Accordingly, we vacate that portion of the judgment awarding Karen $20,000 as her share of marital assets used to pay for the Port Barrington home.

Dennis also contends that the trial court erred in ordering reimbursement of the marital estate for mortgage payments on the Carpentersville and Round Lake Beach rental properties. The trial court concluded that the marital estate contributed approximately $144,000 to the mortgages, representing 11 years of mortgage payments. The court awarded Karen $73,000. Dennis argues that

the mortgage payments were not made entirely out of marital funds. Instead, he contends that he split the payments with his brother and that rent payments from a tenant occupying the Round Lake Beach property were applied to the mortgage.

The record clearly supports the conclusion that marital funds were applied to the mortgages on the nonmarital rental properties, but it does not support the trial court's conclusion as to the amount of marital funds used for that purpose. Dennis testified that over $50,000 from the Magic Carpet Service checking account was applied to the mortgages on the rental properties. There is no question that funds in the Magic Carpet Service checking account were marital property. It makes no difference that some of the money in the account may have been rent from the nonmarital properties. Had Dennis segregated the rent, it would not necessarily have constituted marital property. See 750 ILCS 5/503(a)(8) (West 2006) (nonmarital property includes income from nonmarital property "if the income is not attributable to the personal effort of a spouse"). However, Dennis commingled the rent payments with marital property by depositing the rent in the Magic Carpet Service account, so the rent payments were transmuted into marital property. 750 ILCS 5/503(c)(1) (West 2006). Because there was no evidence as to the amount of rent deposited into the Magic Carpet Service account, the rent payments are not retraceable by clear and convincing evidence. Accordingly, the nonmarital estate is not entitled to reimbursement for the contribution of the rent. Thus, Dennis's testimony established a contribution of over $50,000 from the marital estate to his nonmarital estate. Karen's testimony, based on her review of pertinent records, was evidence that the marital estate contributed $57,000 to the rental properties. There is no evidence to support the trial court's conclusion that the marital estate made all of the mortgage payments on the rental properties.

Dennis argues that the marital estate is not entitled to reimbursement because the record does not show what portion of the payments were for principal and what portion were for interest. As noted, Snow holds that there is no right of reimbursement for interest payments. Snow, 277 Ill. App. 3d at 650. We note that Snow cites no authority for the proposition that contributions of interest should be treated differently from contributions of principal. Furthermore, our research indicates no other Illinois case that stands for this proposition. We additionally note that in Crook, our supreme court cited Snow favorably for the proposition that "a marital estate is not entitled to reimbursement for mortgage payments toward nonmarital property when the marital estate has already been compensated for its contributions by use of the property during marriage." Crook, 211 Ill. 2d at 454. However, Crook made no reference to the Snow court's holding that there is no right of reimbursement for interest payments. As we can ascertain no basis for this part of the Snow court's holding, we decline to follow it.

Here, as noted above, there is nothing in the record to support the trial court's finding that the marital estate contributed $144,000 to the mortgages. Rather, based on Karen's testimony, the record reveals that the marital estate contributed $57,000 to the mortgages. We therefore vacate that portion of the judgment awarding Karen a $73,000 interest, secured by a lien, in the Port Barrington home. We hold that the marital estate was entitled to reimbursement in the amount of $57,000. We remand to the trial court to divide that amount between the parties in just proportions.

Dennis finally argues that the trial court erred in setting child support based on his 2004 gross income of about $138,000. Dennis argues that the trial court should have deducted expenses set forth in the statement of income and expenses attached to the affidavit that he filed with the trial court on March 24, 2005.

We have held that "[t]he findings of a trial court as to income and the awarding of child support are within the discretion of the trial court and will not be disturbed on review absent an abuse of discretion." In re Marriage of DiFatta, 306 Ill. App. 3d 656, 662 (1999). According to the Act's child support guidelines, the minimum amount of support for two children is 28% of the supporting parent's net income (750 ILCS 5/505(a)(1) (West 2006)) unless the court finds that it is appropriate to deviate from the guideline amount (750 ILCS 5/505(a)(2) (West 2006)). Section 505(a)(5) of the Act provides that "[i]f the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 2006). That provision applies here. It does not appear that Dennis keeps detailed or accurate business records. He testified that he calculated his 2004 gross income by adding up the deposits to his business checking account. However, he admitted that in 2004 he had at least one job for which he was paid a significant sum in cash that was never deposited in the account. Instead, he used the cash to pay for repairs to his truck. He assumed, but evidently was not sure, that he had excluded the truck repairs from his business expenses. Apparently, in prior years, cash jobs were more frequent. In 2004, Dennis also had income that was seized in garnishment proceedings prior to being deposited in the account. In addition, the checking deposits do not reflect income from work performed in lieu of rent.

The trial court observed that Dennis was never asked about the expenses of running and maintaining his business. Although Dennis maintains that the trial court should have considered the expenses listed in the statement of income and expenses attached to his affidavit, the trial court could reasonably conclude that the statement was unreliable. Dennis testified that his sister had prepared the affidavit. Although he later clarified that he and his sister worked on it together, it is not clear

to what extent the affidavit and the attached statement of income and expenses were based on Dennis's personal knowledge. Moreover, Dennis admitted that the statement did not account for his markup on materials purchased from Shaw Industries. Indeed, Dennis conceded that the entire affidavit might be incorrect. The trial court was not obliged to rely on the affidavit or the attached statement of income and expenses.

Dennis also contends that the trial court should have deducted health insurance premiums he pays for himself and his children from his gross income. See 750 ILCS 5/505(a)(3)(f) (West 2006). These premiums evidently total $761 per month. The trial court set child support in light of the assumption that Dennis would be liable for $58,340 in state and federal taxes. This appears to be a reasonable assumption. Based on his gross income of $138,000, Dennis would have a net income of $79,660 per year, or $6,638 per month, for child support purposes. As Karen points out, based on this net income, the guideline child support amount would be about $1,858. If Dennis's net income were further reduced by $761 per month to $5,877 per month, the guideline support amount would still be about $1,645. Under these circumstances, the award of $1,600 per month was not unreasonably high and the trial court did not abuse its discretion in awarding that amount.

For the foregoing reasons we vacate those portions of the judgment of dissolution awarding Karen $20,000 as her share of marital property contributed to the Port Barrington home and $73,000 as reimbursement for contributions from the marital estate to Dennis's rental properties. We affirm the award of child support and the remainder of the judgment. We remand for further proceedings in accordance with this opinion.

Affirmed in part and vacated in part; cause remanded with instructions.

O'MALLEY and BYRNE, JJ., concur.