**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220393-U

Order filed November 3, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| RITA SCHIFFBAUER, | ) | La Salle County, Illinois, |
| | ) | |
|     Petitioner-Appellee/Cross-Appellant, | ) | Appeal No. 3-22-0393 |
| | ) | Circuit No. 14-D-59 |
|     v. | ) | |
| | ) | |
| DOUG SCHIFFBAUER, | ) | Honorable |
| | ) | Troy D. Holland, |
|     Respondent-Appellant/Cross-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The court's classification of the 160-acre property was against the manifest weight of the evidence. The court's classification of the 120-acre property was not against the manifest weight of the evidence. We need not decide whether the court abused its discretion in splitting the marital estate, as that division will need to be revisited. The court's determination that there was no dissipation related to the parties' son performing farmwork and being paid for it was not against the manifest weight of the evidence. The court must reexamine the method by which the dissipation award is to be paid.

¶ 2       Respondent, Doug Schiffbauer, appeals the La Salle County circuit court's amended judgment for dissolution of marriage. Doug argues that the court's finding that certain real estate was Petitioner, Rita Schiffbauer's, nonmarital property was against the manifest weight of the evidence. Rita cross-appeals, arguing that if this court agrees with Doug's argument, then this court should determine that it was likewise against the manifest weight of the evidence for the court to find that certain other real estate was Doug's nonmarital property. She also argues that the court abused its discretion in splitting the marital estate. Rita further argues that the court's finding, that Doug did not dissipate the marital estate by having their son, Kirby, farm with him and paying Kirby for his work, was against the manifest weight of the evidence. Rita also argues that the court erred in the manner by which it ordered dissipation paid to her. We affirm in part, reverse in part, and remand to the trial court.

¶ 3                                    I. BACKGROUND

¶ 4       Rita and Doug were married in December 1983. They had three children, including Kirby Schiffbauer. Rita filed a petition for dissolution of the marriage in March 2014. The matter proceeded to trial. Rita and Doug stipulated to the marital or nonmarital status of all property, with a few exceptions, including two parcels of real estate. The disputed properties consisted of 160 acres (160-acre property) in Tonica, which Rita argued was her nonmarital property and 120 acres (120-acre property) in Tonica, which Doug argued was his nonmarital property. Rita also claimed that Doug dissipated marital funds, in part, by paying Kirby for farming marital property, by selling farm equipment to Kirby for less than its value and by trading in marital farm equipment to buy new equipment with Kirby. Evidence was presented that Rita had approximately 12% interest in a company established by her parents and stood to inherit a greater interest. Rita is also a beneficiary of her brother's revocable trust. Doug stood to inherit

2

from his parents. Rita's nonmarital property was used as collateral to purchase additional marital property that is not in dispute on appeal.

¶ 5                                    A. 160-Acre Property

¶ 6        Rita testified that the 160-acre property was acquired in 2001 and is titled in her name. She acquired the property by exchanging farmland she had been gifted by her grandparents (gift property). Rita sold the gift property for $210,000. The parties purchased the 160-acre property for $336,000. She and Doug obtained a bridge loan and then a mortgage to finance the difference between what she received from the gift property and the cost of the 160-acre property. She and Doug bought the 160-acre property with the intent to farm that property. Prior to buying the 160-acre property, they cash rented it. Farm subsidies for the 160-acre property were made payable to Rita. Marital funds paid the taxes on the 160-acre property during the marriage.

¶ 7        Doug testified that the 160-acre property was purchased with the intent of being brought into the marriage and farmed as marital property. Doug has been farming the 160-acre property and earning marital income from the property since it was purchased. The property was purchased in 2001 and is titled in Rita's name only. The mortgage obtained to purchase the property was executed by both Doug and Rita.

¶ 8                                    B. 120-Acre Property

¶ 9        Doug testified that he bought the 120-acre property prior to the marriage, in March 1983. Doug did not put any money down for the purchase of the property and the first mortgage payment was made in January 1984, after he and Rita were married. The promissory note for the purchase of the property was "rewritten" in 1985 in both Doug and Rita's names.

¶ 10                            C. Kirby Farming

¶ 11        Rita testified that Doug never discussed with her that Kirby would be farming with him and receiving a portion of the farm income. Prior to farming with Doug, Kirby was in school and received a degree in agriculture. Kirby graduated in 2014 and got a job. Rita was asked if, after Kirby graduated college, he came home to farm on the marital property. She stated that after Kirby graduated he took a full-time job. Kirby was at the farm periodically, but was not a full-time farmer. Doug's counsel questioned whether that was because Rita would not let him. Rita responded that she thought "it's appropriate when the marriage is dissolved to give [their] kids that opportunity," but she did not want to involve them during the divorce. Rita noted that her intention was not to keep her kids off of the farm but instead to give them the opportunity to work on the farm; however, she felt that the divorce should be resolved first. Rita believed that the money Kirby was paid for farming "should have gone to the marital pot." She did not question that Kirby actually farmed the land and had done so starting in 2014. Rita's claim for dissipation is based on her belief that Kirby should not have been paid anything because he should not have been working on the farm. She could not say at trial that she did not want Kirby farming. Rita claimed that Kirby was farming without her consent. She stated that it should not have happened during the divorce and if the divorce had ended sooner the opportunity for him to farm could have arisen sooner.

¶ 12        Rita agreed that Kirby had always taken an interest in farming the marital farm. She supported Kirby in his decision to select a college major in agriculture and she talked about that decision with him. When Kirby chose to go to school for agriculture Rita knew that when Kirby graduated he wanted to "come back and farm." Rita was asked if it was correct that Kirby came home and "immediately start[ed] farming, according to the plan that everyone kind of understood

4

to be?" She answered that Kirby was farming. Rita agreed that since Kirby was farming the ground and producing crops that have been sold, the funds would have paid down debt on items that the marriage utilized. Rita acknowledged that Kirby was helping to pay down certain debts, including John Deere accounts and loans. In 2018, Doug was hospitalized and Kirby farmed the marital farm while Doug was unable to do so. During that time, Rita did not pay any of the marital obligations for the farm-related expenses. Rita approved of Kirby farming the marital farm during that time to pay the marital debts.

¶ 13    Kirby testified that he picked his college degree in agriculture in 2009 and that both of his parents were instrumental in helping him pick that major. He always intended on coming home to farm with his family. Kirby came home in 2014 to farm. There was not enough income to farm full-time, but the plan was for him to find a job close to home so he could help on the farm. Between his junior and senior year, Kirby had conversations with Rita about coming home and farming.

¶ 14    Doug testified that he and Rita had conversations about their children farming. Kirby started farming with him in 2014 because Kirby is an asset. Doug testified, that as a farmer, you need to have enough good people in your operation and that he did not need to coach Kirby as Kirby knew the land. He additionally cited Kirby's education and experience with farm equipment, chemicals, herbicides and grain. Since Kirby had been farming, he helped pay down marital debts. Kirby also helped pay day-to-day operating expenses, including the cost of seed, fertilizer, and fuel. In 2018, Doug had a farming accident that left him incapacitated for approximately 3.5 months. He was not able to do much with harvesting, but Kirby helped do what Doug could not. Doug's father, brother, and neighbor also helped at that time. Doug testified that Kirby helped farm all the properties that Doug rents and not just the marital

5

property. Doug helps his father and brother farm and they help him, but they do not compensate each other.

¶ 15                                    D. Court's Findings and Posttrial Matters

¶ 16        The court issued a written opinion and order explaining its findings and setting forth the property division. It noted that Rita had a larger share of nonmarital assets than Doug. Additionally, the court found that both parties will potentially inherit additional farmland and interests in farmland but that Rita stood to inherit significantly more. The court also determined that Doug's future income was dependent on the amount of property he could farm, without having to pay rent, while Rita would receive income from working as a nurse and cash rent from farmland. The court ultimately awarded Doug a larger share of the marital estate and noted that it was doing so in lieu of awarding the maintenance requested by Doug.

¶ 17        As to the disputed properties, the court first noted the general presumption that property acquired during the marriage is presumed to be marital property and property acquired before marriage is nonmarital. The court found that the 160-acre property was Rita's nonmarital property. The court found that although there was a presumption that it was marital because it was acquired during the marriage, Rita overcame that presumption by clear and convincing evidence. The court determined that Rita exchanged nonmarital property for the 160-acre property and that the property was obtained through the sole use of nonmarital property as collateral for the loan used to acquire the 160-acre property. In making this determination, the court noted that Rita had previously used her nonmarital property as collateral for purchasing other property, but the other property was titled in both her and Doug's names, while the 160-acre parcel was titled solely in her name. The court determined that the 120-acre property was Doug's nonmarital property, as he had purchased it prior to marriage.

6

¶ 18    The court rejected Rita's dissipation claim relating to Kirby being paid for farming with Doug. The court noted Kirby's testimony that he had conversations with both Rita and Doug about his interest in farming and majoring in agriculture in college. Kirby became involved in the farming operations after he graduated. The court noted that Kirby shared in the debts from the farming operation. The court determined that there was no evidence that Kirby was paid excessive amounts or that his labor was not necessary for the farm. It found that the evidence indicated that Kirby's contributions benefitted the farming operation, particularly in 2018 when Doug was incapacitated. The court also noted that Rita's claim lacked specificity as she wanted the income paid to Kirby returned to the marital estate, but doing so would ignore Kirby's labor and the debts and expenses he paid.

¶ 19    The court found dissipation relating to the sale of the farm equipment to Kirby in the amount of $108,225. To compensate Rita for this dissipation, the court assigned the installment contract between Kirby and Doug to Rita. The court found that the payment stream to Rita from the contract would be $7500 per year, plus interest, at a rate of 3.5% per year on the remaining principle. The court calculated that the payments would total $111,450, plus interest of $33,699.81, if the loan was not prepaid.

¶ 20    Both parties filed motions to reconsider. In its order, the court noted that it had allocated the net marital assets of 69.13% to Doug and 30.87% to Rita and that there was no basis to reconsider those percentages. The court modified its ruling regarding the installment contract to make Doug responsible for collecting the installment from Kirby and paying the installment to Rita every year, regardless of whether Kirby paid Doug. Doug appeals and Rita cross-appeals.

¶ 21                                    II. ANALYSIS

¶ 22                                   A. Doug's Appeal

¶ 23        Doug argues that the court's determination that the 160-acre property was Rita's

nonmarital property was against the manifest weight of the evidence. Specifically, he argues that

Rita did not exchange her nonmarital property for the 160-acre property because the nonmarital

property only satisfied a portion of the cost of the 160-acre property and the marriage, through a

bridge loan and then mortgage, satisfied the rest of the cost of the property. Doug further argues

that although the 160-acre property was used as collateral for the mortgage, it was not nonmarital

property, such that it could not fall under the exception for property acquired by the sole use of

nonmarital property as collateral for a loan.

¶ 24        The court's classification of property as marital or nonmarital will not be disturbed unless

it is against the manifest weight of the evidence. *In re Marriage of Woodrum*, 2018 IL App (3d)

170369, ¶ 101. "A finding is against the manifest weight of the evidence when the opposite

conclusion is clearly evident or where the finding is unreasonable, arbitrary, and not based on the

evidence." *Id.* Section 503(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act)

provides that property acquired after marriage is presumed to be marital property. 750 ILCS

5/503(b)(1) (West 2020). The presumption "is overcome by showing through clear and

convincing evidence that the property was acquired by a method listed in subsection (a) of this

Section or was done for estate or tax planning purposes or for other reasons that establish that a

transfer between spouses was not intended to be a gift." *Id.* Subsection 503(a) of the Act

provides that nonmarital property includes "property acquired by gift, legacy or descent or

property acquired in exchange for such property" and "property acquired by a spouse by the sole

use of non-marital property as collateral for a loan that then is used to acquire property during

8

the marriage." *Id.* § 503(a)(1), (6.5). "If marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estates, the commingled property shall be deemed transmuted to marital property." *Id.* § 503(c)(1)(B).

¶ 25        Here, it is undisputed that the 160-acre property was acquired subsequent to the marriage and is thus presumed to be marital property. Therefore, in order for the property to be classified as nonmarital, Rita had to show by clear and convincing evidence that the 160-acre property was acquired by one of the methods listed in subsection 503(a) of the Act. The circuit court determined that she had done so pursuant to subsections (a)(1) and (a)(6.5).

¶ 26        Section 503(a)(6.5) of the Act provides that property is nonmarital if acquired through the use of a loan that is collateralized solely by nonmarital property. Although the 160-acre property was used as collateral for the loan used to fund the remaining purchase price, section 503(a)(6.5) would only apply if there was some other basis to conclude the 160-acre property was nonmarital.

¶ 27        Turning to the only other basis cited by the court, section 503(a)(1) of the Act provides that property acquired in exchange for property acquired by gift is nonmarital. The decision in *In re Marriage of Hegge*, 285 Ill. App. 3d 138 (1996) is instructive. In *Hegge*, during the parties' marriage, the wife sold nonmarital property and used the funds to pay more than half of the purchase price for a new property. *Id.* at 139. The husband and wife obtained a mortgage loan for the balance of the purchase price. *Id.* Both husband and wife signed the mortgage note but the property was titled only in the wife's name. *Id.* at 139-40. They paid the mortgage with funds from a joint checking account. *Id.* at 140. The circuit court determined that the wife acquired the new property in exchange for nonmarital property and classified the new property as nonmarital. *Id.* The appellate court reversed, finding that the wife failed to overcome the presumption that

9

the new property was marital. *Id.* at 142. The court noted that the wife "failed to trace the entire purchase price of the [new] property to a nonmarital source." *Id.* at 143.

¶ 28 Similarly, here, although Rita provided nonmarital property in partial exchange for the 160-acre property, it was not sufficient to pay the entire purchase price. Instead, the marriage incurred debt in the form of a bridge loan and then a mortgage in order to pay the rest of the purchase price. Rita failed to establish that the entire purchase price of the 160-acre property was funded through a nonmarital source. See *In re Marriage of Smith*, 86 Ill. 2d 518, 531 (1981) ("[I]n order to preserve its nonmarital status one must prove that the entire property was acquired exclusively by one of the methods listed in section 503(a)."). Thus, the 160-acre property was not obtained through the exchange of nonmarital property pursuant to section 503(a)(1) and could not be considered nonmarital property under that section. The court's finding to the contrary was against the manifest weight of the evidence. Likewise, since the 160-acre property is not nonmarital under section 503(a)(1), and the 160-acre property itself was used as the collateral for the loan used to purchase it, it cannot be said that nonmarital property was used as the collateral. Therefore, section 503(a)(6.5) does not apply and the court's finding to the contrary was against the manifest weight of the evidence.

¶ 29 Additionally, contrary to Rita's assertion, this is not a situation where marital property is being contributed to a nonmarital property, such that the nonmarital property should retain its identity under section 503(c)(1)(A)(i). Instead, this situation falls under subsection (c)(1)(B), in which marital and nonmarital property are commingled into newly acquired property and the newly acquired property is deemed marital property. Based on the foregoing, we conclude that the court erred by determining the 160-acre property was nonmarital and the matter must be

10

remanded. On remand, the court must consider the 160-acre property as a marital asset when redistributing the marital property.

¶ 30                                    B. Rita's Cross-Appeal

¶ 31                                    1. 120-Acre Property

¶ 32         Rita first argues that if this court finds that the 160-acre property is marital, consistency necessitates a finding that the 120-acre property is also marital. She argues that, if *Hegge* provides that the combination of nonmarital with marital property results in new marital property, then the 120-acre property is marital because marital funds were used to pay the loan on the property.

¶ 33         As set forth above, we review the court's classification of property under the manifest weight of the evidence standard. *Woodrum*, 2018 IL App (3d) 170369, ¶ 101. Property acquired after the marriage is presumed to be marital and property acquired before marriage is nonmarital. 750 ILCS 5/503(a)(6), (b)(1) (West 2020). "If marital and non-marital property are commingled by one estate being contributed into the other *** the contributed property transmutes to the estate receiving the property," if the contributed property lost its identity. *Id.* § (c)(1)(A)(i).

¶ 34         Contrary to Rita's argument, consistency in application of the law does not require that the 160-acre property and the 120-acre property be classified the same. *Hegge* did not provide that the combination of nonmarital and marital property results in new marital property but instead involved a situation, similar to the 160-acre property, where nonmarital property and marital property were commingled to acquire a new property. That is not the situation with the 120-acre property, and its classification is controlled by section 503(c)(1)(A)(i). Specifically, the 120-acre property is nonmarital as it is undisputed that it was acquired prior to marriage. See *id.* § (a)(6). Marital property was then contributed to the nonmarital property when marital funds

11

were used to pay the mortgage on the property. Because the marital property, *i.e.*, marital funds, lost its identity when it was used to pay the mortgage on the nonmarital property, it transmuted to nonmarital property pursuant to section 503(c)(1)(A)(i). See *e.g.*, *In re Marriage of Ford*, 377 Ill. App. 3d 181, 182, 186-87 (2007) (determining that the marital estate was not entitled to reimbursement when it had been fully compensated for its contribution of $58,000 to pay the mortgage on the husband's nonmarital property through its use of that property during the marriage). Therefore, the court correctly classified the 120-acre property as Doug's nonmarital property. Again, this is different than the 160-acre property because that property was acquired after the marriage and was thus presumed to be marital property. Rita failed to establish any of the exceptions to that presumption. Because the acquisition of these two properties involved different circumstances under the relevant statutes, classifying the properties differently does not raise any issue of inconsistency in the application of the law.

¶ 35                                    2. Distribution of Marital Property

¶ 36            Rita next argues that the court abused its discretion in awarding Doug substantially more of the marital property. She further raises specific issues that she believes were errors of law in the court's distribution, which include the consideration of her potential inheritances, failing to take into consideration that her interest in a family company was a minority interest when valuing that interest, and failing to value Doug's income or potential income, including income from the 2020 crops. Initially, we note that we need not reach the issue as to the distribution of marital property as a whole because it will likely change on remand when the court reconsiders the distribution in light of our determination that the 160-acre property should have been classified as marital property.

12

¶ 37　　　　　As to Rita's argument regarding the consideration of potential inheritances, we see no error by the court. Specifically, section 503(d)(11) of the Act provides that in distributing the marital property, the court should take into account "the reasonable opportunity of each spouse for future acquisition of capital assets and income," which would include interests the parties stand to inherit. Notably, the court, in *In re Marriage of Benz*, 165 Ill. App. 3d 273, 287 (1988), cited this factor after concluding "there is generally no error where a court considers a future or anticipated inheritance when distributing property." See also *In re Marriage of Eddy*, 210 Ill. App. 3d 450, 460 (1991) ("Potential inheritances, just as expected degrees or licenses, are not property which can be valued and awarded to a spouse, although they can be a given some consideration in determining property distribution.").

¶ 38　　　　　Turning to the valuation of Rita's share in the family company, her argument in her opening brief consists of one sentence simply stating the court did not take into consideration that her share was minority and that she lacked the power to compel distributions. She makes no argument as to how this was error, the method the court should have used to value her share, or what the valuation should have been. More importantly, her opening brief failed to include citation to any authority to support her position that the court's failure was an error as required by Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and that "[p]oints not argued are forfeited and shall not be raised in the reply brief"). As such, we conclude that Rita failed to properly develop and support her argument in this regard. Similarly, Rita failed to properly develop and support her argument regarding the court's failure to value Doug's income. Specifically, Rita's opening brief consists solely of statements of what the court failed to do without any argument as to why the court had

13

to make such valuations or citation to legal authority supporting that position as required by Rule 341(h)(7). Because of these failures we deem these issues forfeited and decline to address the merits of these issues.

¶ 39                                    3. Dissipation

¶ 40        Rita next argues that the court erred by finding that Doug did not dissipate marital assets when including Kirby in the farming operations and paying him for his work. She argues that Doug unilaterally brought Kirby into the farming operation after the marriage had broken down and continued Kirby's involvement after she objected. Rita argues that the decision to involve Kirby denied the marriage of 50% of the income Doug would otherwise have made.

¶ 41        Dissipation is "the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 203 (2005). "Whether a given course of conduct constitutes dissipation depends upon the facts of the particular case." *In re Marriage of Carter*, 317 Ill. App. 3d 546, 551 (2000). "Intent is one factor that a court may consider when determining whether dissipation has occurred." *In re Marriage of Schneeweis*, 2016 IL App (2d) 140147, ¶ 40. "The spouse charged with dissipation has the burden of proving, through clear and specific evidence, how the marital funds were spent." *Id.* ¶ 37. A determination as to whether dissipation occurred is reviewed using the manifest weight of the evidence standard. *Vancura*, 356 Ill. App. 3d at 204.

¶ 42        Here, there is no dispute over where the funds went, as they went to the parties' son, Kirby. There is also no dispute that Kirby performed farm work, that he was paid commensurate with that work, and that he had an agricultural background. The only dispute is whether the court's finding that Doug's actions in paying Kirby to help farm the properties did not constitute

14

dissipation was against the manifest weight of the evidence. Under the facts of this case, we cannot say that it was. Initially, we note that the court found that Rita's dissipation claim was not sufficiently specific as to the amount dissipated. This is because her claimed dissipation, the amount that was paid to Kirby, failed to take into account amounts spent by Kirby on the farming operation and the amounts by which his farming helped reduce marital debt. This finding is not against the manifest weight of the evidence, as there was testimony that Kirby contributed to the payment of expenses and helped to reduce marital debt. Further, Doug testified that Kirby was an asset to the farming operation based upon his prior experience. This proved beneficial to the marriage in 2018, when Doug suffered an accident and was incapacitated. That accident resulted in Doug relying on Kirby and other family members to continue the farming operations. Additionally, as noted above, Doug testified that Kirby contributed to the farming expenses and marital debt was paid down through Kirby's efforts. Based on the foregoing, we cannot say that the court's determination that Doug did not dissipate marital property by involving Kirby in the farming operations was against the manifest weight of the evidence, as there was evidence that it was beneficial to the farming operations and thereby the marriage.

¶ 43                          4. Payment of Dissipation/Installment Contract

¶ 44        Last, Rita argues that the court erred by ordering that her dissipation award be paid to her by Doug annually when the installment payments are due from Kirby. These payments are on the equipment contract between Kirby and Doug that resulted in the dissipation award. She argues that this arrangement will result in the parties continuing to have involvement with each other and that the court should look to sever ties between the parties whenever possible. A court's distribution of marital property will not be disturbed absent an abuse of discretion. *In re Marriage of Albrecht*, 266 Ill. App. 3d 399, 402 (1994). In dividing property, the court should

15

look to sever the ties between the parties and not to prolong the relationship between the parties unnecessarily. *Id.* at 403-04. Here, the court's order allows Doug to pay the dissipation amount over a period of 15 years. Although a share of marital property may be paid in periodic payments to prevent hardship, there was no such specific finding here. See *Id.* at 404. As the matter is already being remanded to reconsider the property distribution in light of this court's determination that the 160-acre property is marital, the court, in doing so, should also reexamine the method by which Doug is to pay the dissipation amount awarded to Rita and make specific findings related thereto.

¶ 45                                   III. CONCLUSION

¶ 46      The judgment of the circuit court of La Salle County is affirmed in part, reversed in part, and remanded to the trial court.

¶ 47      Affirmed in part and reversed in part.

¶ 48      Cause remanded.